[No. 21890. Department Two. December 30, 1929.]

THE STATE OF WASHINGTON, *Respondent*, v. W. N. POWERS, *Appellant*.[1]

[1]Reported in 283 Pac. 439.

64

*Emmett G. Lenihan,* for appellant.

*Ewing D. Colvin* and *Cordelia M. Thiel,* for respondent.

Main, J.—W. N. Powers and the nurse employed by him were charged by information with the crime of abortion. The information contained two counts, the first charging abortion upon the prosecuting witness September 13, 1927, and the second an abortion upon the same person June 11, 1928. The trial resulted in a verdict of acquittal of the nurse upon both counts. Doctor Powers was acquitted on the second count and convicted on the first. At the conclusion of the state's evidence, a motion was made for a directed verdict, which was overruled. The motion was repeated at the conclusion of all the evidence, and likewise overruled. After return of the verdict, a motion for a new trial was interposed and overruled. From the judgment and sentence entered upon the verdict, Doctor Powers appeals.

The facts essential to be stated are these: The prosecuting witness lived with her mother in Seattle, and one George Everetts, who was fifty-five years of age, was her great uncle. Early in the year 1927, while the prosecuting witness was in the seventh grade in school, she had sexual intercourse with Everetts, and during the summer she became pregnant. She and Everetts then consulted a physician other than the appellant who examined her and told her that she was pregnant about two months. Shortly after this, she and Everetts went to the city of Everett and were married.

About one week thereafter, in company with Everetts, she went to see the appellant, and Everetts stated to the appellant that he wanted the prosecuting witness examined. The appellant examined her, stated that the cost of curettement would be sixty dollars and for them to return on Tuesday of the next week, which was September 13, 1927, for the operation. On the morning of that day, the prosecuting witness attended school, wrote a geography test and then asked the teacher to be excused, claiming that she was sick. The teacher excused her without sending her to the school nurse. A rule of the school was that a teacher should not excuse a pupil on account of illness unless she gave the appearance of being ill. The teacher, when testifying, did not remember anything about the matter other than the record which she kept at the time showed.

Immediately after leaving school, she met Everetts and they together went to appellant's office. At this time the appellant had the prosecuting witness sign a statement which he prepared as he talked to her that morning. Among other things, the statement recites that the prosecuting witness had taken medicine and that she had begun to flow off and on. The sixty dollars for the operation was paid at this time. The appellant gave the prosecuting witness a hypodermic in her right hip. The nurse who was informed against with the doctor prepared her for the operation, and when she was on the operating table and the nurse giving her the anesthetic, the appellant washed her out preparatory to the curettement. After the operation, she remained in a bed at the doctor's office for about two hours, then she returned home, remained in bed the balance of that day and a portion of the following day. The third day she again returned to school and continued therein.

66

The prosecuting witness testified that, at the time of the first examination, the appellant did not take her temperature, but only placed one hand inside of her and felt around on the outside with the other. She testified that, when she went for the operation, the appellant did not take her temperature or her pulse. She also testified that, about two weeks prior to the operation, she had taken some medicine for the purpose of producing an abortion, but that it had no effect other than to make her sick the first day or two, and then she ceased taking it. She said that she was in good health, and was not flowing either at the time of the first examination or at the time of the operation.

The medical testimony offered by the appellant was to the effect that, if the patient had an accelerated pulse, a rising temperature and was flowing, curettement was recognized in the medical profession as proper. It was also testified that the rising temperature, together with the rapid pulse and the flowing, would indicate infection. The testimony of the appellant and the nurse in many material parts was in conflict with that of the prosecuting witness. It is unnecessary here to detail their testimony, because, if the evidence was sufficient to take the question to the jury, then it was a question for them to determine.

The first question is whether the evidence presented a question for the jury.

Section 2448, Rem. Comp. Stat., provides that:

"Every person who, with intent thereby to produce the miscarriage of a woman, unless the same is necessary to preserve her life or that of the child whereof she is pregnant, . . . shall be guilty of abortion, . . ."

Under this statute, it was necessary for the state to prove that the curettement of the prosecuting witness

in this case, of which the appellant was found guilty, was not necessary to preserve her life, and the state assumed that burden.

If the appellant, in performing the operation, did something which was recognized and approved by those reasonably skilled in his profession practicing in the same community with him and the same line of practice, then it cannot be said that the operation was not necessary to preserve the life of the patient. That circumstantial evidence is competent to prove the absence of a necessity for an operation in order to preserve a woman's life, is amply supported by authority. *State v. Longstreth,* 19 N. D. 268, 121 N. W. 1114, and cases there cited; 1 Corpus Juris, p. 330. If the testimony of the prosecuting witness is true, and the jury had a right to believe it, then the appellant at no time took her temperature, and performed the operation without so doing and when she was not, and had not been, flowing. As above indicated, according to the medical testimony offered by appellant, a curettement is recognized as proper where there was flowing, increased temperature and accelerated pulse, for the reason that infection would be indicated. If the prosecuting witness' testimony is believed, then the operation was performed without the appellant having done what was necessary to determine whether there was infection. The cases of *State v. Shoemaker,* 157 Iowa 176, 138 N. W. 381, and *State v. Aiken,* 109 Iowa 643, 80 N. W. 1073, are based upon entirely different facts from those which are presented in the case now before us.

The case was submitted to the jury upon the theory that, if the appellant exercised his best judgment and skill founded upon his practice and knowledge in his profession, and conscientiously believed that the curettement was necessary to preserve the

life of the prosecuting witness, then he would not be guilty of the crime charged. Whether this is a correct statement of the law we do not here determine. It was an instruction which was favorable to the appellant. Even under this instruction the jury had a right to find from the evidence, as already indicated, and from other circumstances that might be pointed out, that the appellant did not exercise his best judgment and skill, and did not conscientiously believe that the operation was necessary to save the life of the prosecuting witness. The question was for the jury to determine.

It is next contended that the court erred in permitting the state to cross-examine the appellant and also the nurse with reference to other curettements performed by the appellant for a period of eight or nine months prior to the one for which he was convicted. The details of the other curettements were not gone into. The appellant says that this was a showing of other crimes and was against the rule in such cases, but it is not necessary to go into that question. There was nothing to show that the prior curettements were not necessary or in any sense criminal. There was certainly no presumption that those curettements were improper. The showing of the prior curettements bore upon the good faith of the appellant in performing the one for which he was convicted. The case being tried upon the theory that his good faith was a defense, it was proper to inquire into other curettements performed for a reasonable length of time before.

It is next contended that it was error to require the appellant to answer as to prior curettements, because this was compelling him to give evidence against himself in violation of § 9 of art. I of the state constitution, which provides that no person shall be compelled in a criminal case to give evidence against

himself. Section 2148, Rem. Comp. Stat., provides that any person accused of crime in this state may offer himself as a witness in his own behalf and be allowed to testify as other witnesses, and when he shall so testify, he shall be subject " . . . to all the rules of law relating to cross-examination of other witnesses." It is only necessary here to say that requiring the appellant to answer as to other curettements, as already indicated, was not making him give evidence against himself as to other crimes. It was proper cross-examination for the purpose already stated. *State v. Crowder,* 119 Wash. 450, 205 Pac. 850.

It is next contended that the court erred in restricting the cross-examination of the prosecuting witness. On direct examination, this witness testified that she was living with her mother. On cross-examination, after being asked whether Mr. Klinck was her father and she answered in the negative, she was asked whether Klinck and her mother were married. To this question, an objection was interposed and sustained. It is said that the cross-examination was proper as bearing upon the credibility of the witness. In support of this, the case of *State v. Coella,* 3 Wash. 99, 28 Pac. 28, is cited, where it was held that, upon cross-examination, a witness could be asked whether she was a prostitute for the purpose of affecting her credibility. That case, however, does not reach the question here presented. The prosecuting witness was living with her mother, and whether the mother was married to Klinck or not, was a matter which was immaterial. In the ruling complained of, there was no violation of the rule of evidence that a witness may be asked a question touching his general situation, employment and associates, if they are of his own choosing. The extent of the cross-examination of a witness on matters immaterial to the issues being tried or on irrelevant

topics brought in to discredit the witness, is very largely one within the sound discretion of the trial court. *State v. Gaffney,* 151 Wash. 599, 276 Pac. 873.

Finally, it is contended that the court erred in not permitting the prosecuting witness to be impeached upon a statement which it was claimed she had made in the office of the doctor who first examined her, but subsequent to the time the operation was performed by the appellant. This was upon a purely collateral matter and there was no error in disallowing the impeaching question. *State v. Nolon,* 129 Wash. 284, 224 Pac. 932.

We see little in this case aside from the question of fact.

The judgment will be affirmed.

MITCHELL, C. J., FULLERTON, FRENCH, and HOLCOMB, JJ., concur.

[1]Reported in 283 Pac. 458.