THE STATE OF WASHINGTON, *Respondent*, v. EDDIE LEROY
CARR, *Appellant*.

*Maslan & Maslan* and *Robert C. Maslan*, for appellant
(appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Richard H. Blacklow, Deputy,* for respondent.

JAMES, J.—Defendant Eddie Leroy Carr was found guilty of assault in the first degree. The information charged that, with intent to kill, he shot his victim with a .32 caliber pistol. On appeal, Carr assigns ten trial errors.

Carr first asserts that he was denied the opportunity to effectively cross-examine the victim in violation of his constitutionally guaranteed and statutorily confirmed right to confront "the witnesses produced against him." RCW 10.52.060.

Carr's counsel sought to discredit the victim by interrogating him concerning his addiction to heroin. Upon advice of his personal counsel, the victim invoked his privilege against self-incrimination and refused to answer questions concerning his addiction. The trial judge honored the victim's claim of privilege and denied Carr's motion to strike all of the victim's direct testimony.

Carr's counsel, however, continued cross-examination with the result that the victim eventually revealed that he had been a heroin addict; that for some time prior to the assault, he had been on a methadon withdrawal program; and that he still used heroin on occasion. He maintained, however, that he had used no heroin at the time of the assault. In fact, although the victim did initially claim privilege, the continued cross-examination fully explored his addiction.

Necessarily, the scope of cross-examination is peculiarly within the province of the trial judge and his judgment will not be disturbed on appeal in the absence of a manifest abuse of discretion. *State v. Robinson,* 61 Wn.2d 107, 377 P.2d 248 (1962). Any possible error in initially permitting the victim to exercise his privilege was harmless because the victim himself waived the privilege by answering to the continued cross-examination questioning.

Carr's second assignment of error concerns the admissibility of the results of a polygraph examination of the

victim. Prior to trial, the victim submitted to a polygraph examination sought by the prosecutor to "[v]erify or refute the subject's allegation that he was shot by one Eddie Carr." The fact that the examination had been conducted was revealed to Carr's counsel at the omnibus hearing conducted prior to trial pursuant to CrR 4.5. However, in response to the prosectuion's motion in limine, the judge who presided at the omnibus hearing ruled that evidence of the polygraph test would be inadmissible at trial. The trial judge likewise ruled the test inadmissible. Carr contends that he was denied the use of competent evidence to attack the credibility of his accuser. He distinguishes prior cases discussing judicial acceptability of polygraph examinations arguing that, in the present case, the complaining witness, rather than the defendant, was the subject of the test and that the defendant is urging rather than objecting to admissibility.

Washington adheres to the majority rule that the results of a polygraph examination are inadmissible at trial absent a *"stipulation* by both the defense and the prosecution." (Italics in original.) *State v. Woo,* 84 Wn.2d 472, 473, 527 P.2d 271 (1974). However, in *State v. Woo,* the court noted that in *United States v. Hart,* 344 F. Supp. 522 (E.D.N.Y. 1971), it is held that the results of a polygraph test of a prosecution *witness* were admissible under the rule of *Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). *Brady* requires the prosecution "to disclose any evidence which may tend to exculpate a defendant." *United States v. Hart, supra* at 523.

The rationale of *United States v. Hart* is that it is fundamental that a "government should not obtain a conviction on evidence which it knew was perjurious" and that "[i]t would follow that the defendants are entitled to inquire concerning any investigations made by the government which might have put it on notice that a government witness was untruthful." *United States v. Hart, supra* at 523.

In *State v. Woo, supra,* our Supreme Court indicates that

the admissibility of polygraph test results is not a closed question.

> If we are to consider a departure from a virtually unanimous rule against the admissibility of polygraph examinations, absent stipulation, we must be furnished with a record sufficiently adequate to permit review of the subject.

*State v. Woo, supra* at 475. The opinion makes clear, however, that the threshold questions will be the "trustworthiness of the most modern polygraph equipment" and the competence of the "polygraph operator." *State v. Woo, supra* at 474.

The polygraph operator who tested the victim concluded that "[d]eception was indicated in his responses to questions relating to who did the shooting, however, due to the aforementioned physical conditions coupled with a suspected anger factor, an opinion cannot be rendered as to truth or deception." The "physical conditions" referred to by the "polygraphist" were that the subject had taken methadon 30 minutes prior to the test, was suffering from a toothache, had a cold and a respiratory disorder from the gunshot wound and discomfort from suspected gonorrhea. He had also taken 15 mg of Valium and appeared to be very lethargic and under the influence of the drugs that he had taken.

As our Supreme Court in *State v. Woo, supra*, we, in this case, do not reach the ultimate question of whether in all circumstances polygraph testing cannot be used as an aid in judging witness credibility. But, even assuming the validity of polygraph testing for truthfulness, it was not error to exclude the evidence in this case because of the polygraph operator's conclusion that the test which he had given was inconclusive.

Carr further contends that the trial court erred in excluding a statement by the victim regarding his use of Valium on the day of the polygraph test. During cross-examination, the victim denied telling the polygraph examiner that he had used Valium on the day of the exam.

Carr's counsel later unsuccessfully sought to introduce the victim's statement to the examiner concerning his use of Valium at the time of the test. Carr argues that a proper foundation was laid for admission of the impeaching prior inconsistent statement.

■ Impeachment of a witness through use of a prior inconsistent statement is limited by the well-recognized and firmly-established rule that the prior inconsistent statement may not concern matters collateral to the issues at trial. *State v. Oswalt*, 62 Wn.2d 118, 381 P.2d 617 (1963); *State v. Hall*, 10 Wn. App. 678, 519 P.2d 1305 (1974). Carr's allegedly inconsistent statement concerned a purely collateral matter. The trial judge did not err. *State v. Powers*, 155 Wash. 63, 283 P. 439 (1929).

Carr also asserts that three instances of prosecutorial misconduct precluded a fair trial and constituted grounds for a new trial.

First, during cross-examination of a defense witness, the witness referred to Carr's stay in a "halfway house." Following defense counsel's objection, the trial judge cautioned the prosecutor to avoid any mention of the term. The prosecutor, however, used the expression in the next question asked of the witness. A second defense objection was sustained. Carr now asserts that the prosecutor's repeated reference to the term constituted inadmissible evidence of a prior conviction and prejudiced his right to a fair trial.

Second, the prosecutor, in closing argument, stated that Carr "did a terrible, grievous harm to a man." An objection by the defense was overruled. Carr contends that the statement was an unethical and prejudicial expression of the prosecutor's personal opinion of guilt and an attempt to influence the jury with the prestige of the public office.

Third, as the prosecutor's closing argument continued, she stated that the trial judge could decide either to defer or to suspend any sentence imposed on Carr. Carr contends that the statement was prejudicial because the jury might conclude that the charge was not "all that serious" and that

the trial judge could correct any mistaken jury finding of guilt. Carr further alleges that the comment was inaccurate because a special verdict finding an assault with a deadly weapon would preclude the trial judge from granting probation.

Carr's motion for a new trial, pursuant to CrR 7.6 and based upon the preceding allegations of prosecutorial misconduct, was denied.

■ Prosecutorial misconduct does not necessarily constitute prejudicial error. A new trial should be granted only if the defendant's right to a fair trial was prejudiced. Furthermore, whether prosecutorial misconduct prejudiced a defendant's right to a fair trial can be assessed most effectively by the trial judge. Ruling on a motion for a new trial on grounds of prosecutorial misconduct is a matter within the sound discretion of the trial court and will not be altered on appeal absent a showing of a clear abuse of discretion. *State v. Jefferson*, 11 Wn. App. 566, 524 P.2d 248 (1974).

The trial court, after hearing the prosecutor's remarks and observing the jurors' reaction, denied the motion for a new trial. A review of the record on appeal reveals that the trial judge did not abuse his discretion in finding the alleged acts of prosecutorial misconduct insufficient to prejudice the defendant's right to a fair trial. Denying the motion for a new trial was neither an abuse of discretion nor, consequently, reversible error.

Carr further argues that the trial court erred in allowing a prosecutor's inadmissible offer of proof to be made in the presence of the jury. After the defense had rested, the prosecutor called a rebuttal witness. Following the defense objection to the propriety of the rebuttal testimony, the prosecutor made an offer of proof. The prosecutor stated, in the presence of the jury, that the witness, a registered pharmacist, would testify that the victim took methadon and had a urine analysis on the day of the assault. The jury was excused and, after argument, the testimony was ruled irrelevant. Upon the jury's return, the trial judge in-

structed the jury to disregard the testimony and colloquy of counsel.

■ Generally, offers of proof should not be made in the presence of the jury. Excusing the jury to receive an offer of proof, however, is within the discretion of the trial court. *State v. Whetstone*, 30 Wn.2d 301, 191 P.2d 818 (1948).

In the present case, the trial judge found that the jury was neither prejudiced nor influenced by the prosecutor's good faith offer of proof. Furthermore, the lower court's admonition to the jury to disregard the offer effectively cured any possible harm. Neither allowing the offer of proof in the presence of the jury nor finding any possible error unprejudicial was an abuse of discretion.

Carr also assigns error to the giving of instruction No. 9. Instruction No. 9 states:

> Under the laws of this state, the fact that a witness previously has been convicted of a crime does not prevent him from giving evidence. A person who has been convicted of a crime is a competent witness in any civil or criminal proceeding, and such prior conviction may be considered by you only in determining what weight or credibility should be allowed his testimony as a witness in this case.

Carr asserts that, because the prosecution's primary witness, the victim, had a prior conviction, the instruction constituted a comment on the evidence contrary to the prohibition of article 4, section 16 of the Washington State Constitution. According to Carr, the instruction singled out the testimony of the victim, gave it undue prominence, and, therefore, was a prejudicial comment on the evidence by the trial judge.

■ A statement by the trial judge will constitute a comment on the evidence only if the court's attitude toward the merits of the cause is reasonably inferable from the nature or manner of the judge's statement. A comment on the evidence must either reveal the court's evaluation of a particular witness or indicate whether the judge personally believed any of the testimony. *State v. Carothers*, 84

Wn.2d 256, 525 P.2d 731 (1974); *State v. Cerny*, 78 Wn.2d 845, 480 P.2d 199 (1971); *State v. Johnson*, 12 Wn. App. 548, 530 P.2d 662 (1975).

Instruction No. 9 does not convey the court's attitude toward the merits of the cause to the jury. Also, the instruction neither revealed the court's evaluation of the victim as a witness nor indicated whether the judge personally believed any of the victim's testimony. The charge merely instructed the jury on the law concerning the competency of witnesses. Instruction No. 9 was not a constitutionally prohibited comment on the evidence.

Finally, Carr urges that the trial court's refusal to allow him to present a pro se closing argument to the jury violated his constitutionally guaranteed right to defend himself. Const. art. 1, § 22 (amendment 10); U.S. Const. amend. 6. Carr contends that to deny a black defendant faced with an all-white judge, jury, prosecutor, and defense counsel the opportunity to personally address the jury constitutes an abuse of the court's discretionary power to permit an accused to make a statement to the jury.

If a criminal defendant is represented by counsel and counsel is afforded a full opportunity to argue to the jury, then whether the defendant will be permitted to make a separate, pro se closing argument is a matter within the discretion of the trial court. *State v. Brewer*, 73 Wn.2d 58, 436 P.2d 473 (1968). The circumstances of the present case do not demonstrate that the trial judge abused his discretion.

The judgment is affirmed.

WILLIAMS, C.J., and ANDERSEN, J., concur.