[No. 2670–1–III.   Division Three.   December 27, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. KENNETH
EUGENE REED, *Appellant.*

*David E. Ebenger*, for appellant.

*Douglas S. Boole, Prosecuting Attorney*, and *Thomas Benner, Deputy*, for respondent.

McINTURFF, J.—The appellant, Kenneth Eugene Reed, stands convicted of first–degree murder and first–degree robbery.

The facts leading up to these convictions are as follows: In April 1977, the victim, Tim Joy, was in need of a laborer on his farm located near the Colville Indian Reservation. Mr. Joy visited a local employment agency and was introduced to the defendant, Mr. Reed, who agreed to accept the offer of employment. He transferred his personal effects to Mr. Joy's car and the two men returned to the Joy farm where Mr. Reed took up residence.

On April 20, 1977, Mr. Joy was found dead on the kitchen floor of his home. His body exhibited numerous stab wounds, two of which were fatal. There was also evidence Mr. Joy had been assaulted with a blunt instrument.

Although several persons had previously noted Mr. Reed's presence at the Joy farm, he could not be located upon discovery of Mr. Joy's body. The police also noted Mr. Joy's car was missing, and that Mr. Reed had apparently departed without pay. Mr. Joy's car was subsequently found abandoned in the Seattle area.

Mr. Reed was later arrested in Oregon and returned to the Okanogan County jail. One evening Mr. Reed and another cellmate, Johnny Mendoza, apparently discussed the possibility of escape through an opening made possible by removal of a portion of the jail cell bar. Later that same evening, he allegedly assaulted Mr. Mendoza with the cell bar. During the course of the assault, other cellmates overheard Mr. Reed state that he had killed an old man and taken his money and car and words to the effect, "I'm going to do away with you just like I've done Tim Joy."

Following a trial, the jury returned verdicts of guilty on the charges of first–degree murder and first–degree robbery. Mr. Reed was sentenced to life imprisonment on both counts and this appeal followed.

Mr. Reed contends he was denied a fair trial as a result of comments by the prosecutor during closing argument relative to his exercise of the constitutional right to remain silent.[1] We agree, and reverse.

■ Prosecutorial comment on the accused's exercise of his constitutional right to remain silent is forbidden.[2] The State cannot be permitted to put forward an inference of guilt, which necessarily flows from an imputation that the accused has suppressed or is withholding evidence, when as a matter of constitutional law, he is not required to testify. *See State v. Charlton,* 90 Wn.2d 657, 662, 585 P.2d 142 (1978); *State v. Tanner,* 54 Wn.2d 535, 538, 341 P.2d 869 (1959). To hold otherwise would render this constitutional privilege meaningless, for its exercise would result in a costly penalty to the accused. *Griffin v. California,* 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229 (1965).

Judicial intolerance for prejudicial prosecutorial tactics is another important consideration underscoring the scrupulous regard which the law holds for this constitutional right. The public prosecutor, as a quasi–judicial officer, has a duty to act impartially and solely in the interests of justice to the end that each defendant receives a fair trial.[3]

In closing argument, the prosecutor called the jury's attention to the circumstances surrounding Mr. Reed's departure from the Joy farm stating:

---

[1] U.S. Const. amend. 5; Const. art. 1, § 9.

[2] *Griffin v. California,* 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229 (1965); *State v. Bennett,* 20 Wn. App. 783, 786, 582 P.2d 569 (1978); *State v. Messinger,* 8 Wn. App. 829, 840, 509 P.2d 382 (1973); *State v. Wilson,* 3 Wn. App. 745, 746–47, 477 P.2d 656 (1970).

[3] *State v. Case,* 49 Wn.2d 66, 70, 298 P.2d 500 (1956); *State v. Reeder,* 46 Wn.2d 888, 892, 285 P.2d 884 (1955); *State v. Torres,* 16 Wn. App. 254, 263, 554 P.2d 1069 (1976).

> And there is no contention that he was paid. Nobody has said, "Yes, I was paid." No one has said that. But the evidence in this case has to be that he was not paid, because there is nothing to rebut that.

This comment, and, in particular the statement, "Nobody has said, 'Yes, I was paid.'" was a direct reference to the accused's failure to testify. Mr. Reed was the only person who could have said, "Yes, I was paid." *State v. Messinger,* 8 Wn. App. 829, 840, 509 P.2d 382 (1973).

Although defense counsel failed to make an immediate objection to this statement, we find no escape from this flagrant error. Silence is not evidence, and neither it nor an inference therefrom can be used to supply evidence of guilt.[4] We cannot say that the statement was "harmless beyond a reasonable doubt", when (1) the trial was based almost entirely on circumstantial evidence; (2) the prosecutor made other comments during closing argument closely approaching impermissible comment[5] and (3) other error, as we will demonstrate below, was committed during the course of the trial. *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 711, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967).

We will address the defendant's remaining assignments of error as they may be instructive on retrial.

■ Mr. Reed contends it was error for the court to give a "flight" instruction. We agree.

> Evidence is admissible that, after the commission of crime, the accused fled and concealed himself as if to elude justice or endeavor to avoid arrest; or, after arrest, attempted to effect his escape.

---

[4]*State v. Goebel,* 36 Wn.2d 367, 368–69, 218 P.2d 300 (1950); *State v. Kritzer,* 21 Wn.2d 710, 712, 152 P.2d 967 (1944); *State v. Gottfreedson,* 24 Wash. 398, 403, 64 P. 523 (1901).

[5]The prosecutor stated:
"When you couple that sort of thing, when you tell me that a man assaults another person while he is lying defenseless in his bunk with something like this and then you tell me the jail inmates have said this and that and the other thing about what that man said *and the other man offers no rebuttal,* who do I have to believe; especially when are four of them." (Italics ours.)

*State v. Lew,* 26 Wn.2d 394, 401, 174 P.2d 291 (1946); *State v. Bruton,* 66 Wn.2d 111, 112, 401 P.2d 340 (1965). While there is evidence to support an inference of flight arising from the defendant's unexplained departure from the Joy farm, and his alleged participation in an attempt to escape from jail, we are persuaded by the court in *State v. Jefferson,* 11 Wn. App. 566, 571, 524 P.2d 248 (1974), that evidence of "flight" should not be the subject of an instruction. As the court observed at page 571:

> Instructions of this ilk, though time–honored, should be discarded. At best, they merely sanction the use of circumstantial evidence. At worst, they place undue emphasis upon that evidence. Instructions on circumstantial evidence should be expressed in the abstract. We also agree with the District of Columbia Circuit Court of Appeals that
>> evidence of flight tends to be only marginally probative as to the ultimate issue of guilt or innocence. The interest of justice is perhaps best served if this matter is reserved for counsel's argument, with little if any comment by the bench.
>
> *United States v. Robinson,* 475 F.2d 376, 384 (D.C. Cir. 1973).

Next, Mr. Reed complains it was error for the court to admit evidence relating to his assault on fellow cellmate, Johnny Mendoza, and his alleged participation in an escape attempt. The court found the evidence admissible because (1) the assault was an integral part of the defendant's alleged attempt to escape; (2) the assault was relevant to the question of identity, common scheme or plan, and intent; and (3) the assault was similar in nature, except for the weapon employed, to the attack on Mr. Joy. We find no error.

■ It is a well established rule that a defendant must be tried solely on the basis of the charges contained in the information. Evidence of unrelated crimes is inadmissible because its only effect is to prejudice the jury against the

accused.[6] Equally well established, however, are the exceptions to this rule of exclusion. Evidence of prior or subsequent criminal conduct is admissible to prove (1) motive, (2) intent, (3) absence of accident or mistake; (4) common scheme or plan; and (5) identity. *State v. Goebel*, 36 Wn.2d 367, 368–69, 218 P.2d 300 (1950); *State v. Messinger*, 8 Wn. App. 829, 832, 509 P.2d 382 (1973). *See* ER 404(b). In the final analysis, the question of admissibility turns on whether the evidence is relevant and necessary to prove an essential element of the crime charged.[7]

Here, the identity of the person who committed the murder was, for all practical purposes, the principal issue at trial. The statement by Mr. Reed during the course of his assault upon Mr. Mendoza—"I'm going to do away with you just like I've done Tim Joy"—was relevant to the issue of identity. *State v. Boggs*, 80 Wn.2d 427, 433, 495 P.2d 321 (1972); *State v. Messinger, supra* at 836–37. In addition, the statement constituted an admission against interest. *State v. Bray*, 23 Wn. App. 117, 124, 594 P.2d 1363 (1979); *State v. Peterson*, 2 Wn. App. 464, 466–68, 469 P.2d 980 (1979).

As for the court's failure to give a limiting instruction as required by *State v. Goebel*, 36 Wn.2d 367, 368–69, 218 P.2d 300 (1950), we note the court was prepared to explain to the jury the limited purpose for which the evidence was received; however, defense counsel withdrew a proposed instruction to that effect.

Mr. Reed next complains the court erred in limiting defense counsel's cross-examination of police officer Weed.

---

[6]*State v. Goebel*, 36 Wn.2d 367, 368–69, 218 P.2d 300 (1950); *State v. Kritzer*, 21 Wn.2d 710, 712, 152 P.2d 967 (1944); *State v. Gottfreedson*, 24 Wash. 398, 403, 64 P. 523 (1901).

[7]*State v. Dinges*, 48 Wn.2d 152, 154, 292 P.2d 361 (1956); *State v. Lew*, 26 Wn.2d 394, 399, 174 P.2d 291 (1946); *State v. Hobbs*, 13 Wn. App. 866, 867, 538 P.2d 838 (1975); *State v. Bloomstrom*, 12 Wn. App. 416, 420–21, 529 P.2d 1124 (1974); *State v. Messinger*, 8 Wn. App. 829, 832, 509 P.2d 382 (1973); *State v. Whalon*, 1 Wn. App. 785, 791, 464 P.2d 730 (1970).

At trial, Officer Weed testified regarding the police investigation of the Joy homicide. He opined the initial attack on Mr. Joy occurred in his bedroom. On cross–examination, defense counsel asked if it was possible the attack had originated elsewhere in the house. The prosecutor objected to the question as argumentative, but the court permitted the witness to answer. Mr. Reed now contends he was denied the opportunity to expose inaccuracies in the homicide investigation. We disagree.

The scope of cross–examination is within the province of the trial court and this judgment will not be disturbed on appeal in the absence of a manifest abuse of discretion.[8] We find no abuse of discretion.

In response to defense counsel's question, Officer Weed conceded the possibility that the attack on Mr. Joy may have originated in another part of the house. However, Officer Weed had previously given his best opinion regarding the scene of the initial attack, and the only effect of the court's ruling was to restrict unnecessary speculation on that subject. The court's ruling did not preclude further inquiry into the accuracy of the homicide investigation.

Finally, Mr. Reed next contends the court erred in preventing the impeachment of witness John Hunt.

John Hunt, a former employee of Mr. Joy, was called as a witness at trial. On cross–examination by defense counsel, Mr. Hunt stated he voluntarily left Mr. Joy's employ and denied any disagreement between them. Thereafter, defense counsel attempted to call another witness who would testify Mr. Hunt was, in fact, fired by Mr. Joy following a disagreement. This evidence, defense counsel argued, would establish Mr. Hunt's motive to kill Mr. Joy. The court granted the prosecution motion to exclude this testimony on the ground that a witness' testimony on cross–examination regarding a collateral matter may not be

---

[8]*State v. Bradley*, 17 Wn. App. 916, 920, 567 P.2d 650 (1977); *State v. Moore*, 17 Wn. App. 5, 12, 560 P.2d 712 (1977); *State v. Carr*, 13 Wn. App. 704, 705, 537 P.2d 844 (1975).

impeached by extrinsic evidence. The court's ruling was correct.[9]

Judgment of the Superior Court is reversed and the case is remanded for retrial.

MUNSON and ROE, JJ., concur.

---

[9]*State v. Oswalt,* 62 Wn.2d 118, 120, 381 P.2d 617 (1963); *State v. Harp,* 13 Wn. App. 273, 276, 534 P.2d 846 (1975); 5 R. Meisenholder, Wash. Prac. *Evidence* § 304, at 281 (1965).