STATE of Missouri,
Plaintiff-Respondent,

v.

Willie Lee WILLIAMS,
Defendant-Appellant.

No. 46956.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 30, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 5, 1984.

Robert J. Maurer, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Judge.

Willie Lee Williams appeals from a judgment entered on a jury verdict convicting him of stealing over $150, § 570.030 RSMo. 1978. He was sentenced by the court as a persistent offender to ten years imprisonment. § 557.036 RSMo.1978; § 558.016 RSMo.1978. Appellant's principal allegation of error challenges the trial court's refusal to permit him to make a closing argument pro se, even though he was represented by counsel, unless appellant testified under oath. The judgment is affirmed.

Appellant does not challenge the sufficiency of the evidence to support his conviction. There is evidence on the record to show that on April 10, 1982, appellant entered the Wehmueller Jewelry Store, 229 Chesterfield Mall, and took a ring valued at $9,235.00.

The events giving rise to the dispute on appeal began on the first morning of the trial, when counsel retained by appellant six months earlier moved to withdraw from the case upon appellant's request. Appellant and his counsel had requested and obtained three continuances, but appellant had not requested a new attorney until the first morning of the trial.

After an evidentiary hearing at which appellant asserted there was a total breakdown in communication between him and his counsel, the trial court denied defense counsel's motion to withdraw.

In a subsequent pre-trial proceeding, a defense counsel asked the appellant on the record whether he wanted to proceed to trial as his own counsel. The appellant answered he did not. The appellant nonetheless said he did not want his counsel to participate in the trial, even though counsel disagreed and warned appellant of the possible harmful consequences.

The transcript makes clear that, although appellant declined affirmatively to say he wanted to represent himself, he steadfastly clung to his position that he did not want to be represented by his defense counsel. The trial court just as steadfastly ruled repeatedly that the court was not permitting defense counsel to withdraw and that appellant was in fact represented by counsel.

Defense counsel sat with appellant throughout the trial, made statements to protect his client, participated at bench conferences, and represented appellant at pre-trial and post-trial hearings. When the trial was well under way, the trial court granted appellant's request to personally cross-examine the state's witnesses.

When the state rested its case, the trial court asked, out of the jury's presence, whether the defense had any witnesses. Appellant then, for the first time, requested that he be allowed to subpoena witnesses. The trial court denied his request because it was too late. Appellant did not testify and no other evidence was adduced on his behalf.

The trial court refused to allow appellant to argue his case to the jury unless he first testified under oath. Appellant declined to do so.

The state made its closing argument. The jury retired and returned a guilty verdict. The court imposed a ten year sentence based on the verdict.

Appellant did not appeal from the denial of defense counsel's motion to withdraw.

In his first point on appeal, appellant contends the trial court erred in failing on its own motion to inform him at the beginning of trial of his option to proceed to trial pro se, and in failing to have him execute a written waiver of counsel pursuant to § 600.051 RSMo.1978.

■ These allegations were not preserved for appellate review and are raised here for the first time. Rule 29.11(d). This court has considered the merits of

appellant's contention under the plain error rule, 30.20, and finds it has no merit.

■ Where the defendant does not request to represent himself the court is not required voluntarily to advise him of that option. *State v. McCafferty*, 587 S.W.2d 611, 612 (Mo.App.1979).

The facts of this case do not require the application of *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Under *Faretta*, a defendant has a constitutional right to conduct his own trial when he knowingly, intelligently, and in a timely fashion exercises that right. The appellant in this case did not invoke his *Faretta* rights by requesting to serve as his own counsel although he was offered that option.

■ The trial court did not err in failing to apply § 600.051, RSMo.1978. Where an attorney is present to assist a defendant who insists on participating as co-counsel, there is no waiver or attempted waiver of counsel; § 600.051 is inapplicable. See, e.g., *State v. Harper*, 637 S.W.2d 170, 173[4, 5] (Mo.App.1982).

■ There was no manifest injustice or miscarriage of justice in the court's failure voluntarily to allow the appellant to represent himself or to apply § 600.051.

In his second point, the defendant contends the trial court erred in conditioning the defendant's right to offer a pro se closing argument upon waiver of his right not to testify. This contention, too, is without merit.

A pertinent portion of the trial record follows:

THE COURT: Mr. Williams, there's been some indication you might have some idea about arguing your case. Is that—

WILLIE LEE WILLIAMS, THE DEFENDANT: Yes, Your Honor, but I don't wish to take the stand.

THE COURT: You don't wish to take the stand?

WILLIE LEE WILLIAMS, THE DEFENDANT: No, sir.

THE COURT: Well, unless you take the stand and testify, I am not going to let you argue your case.

WILLIE LEE WILLIAMS, THE DEFENDANT: Well, I just want the record to show that I am not waiving my argument, but I don't wish to take the stand.

THE COURT: Okay.

MR. LARREW: I think the record should further reflect that Mr. Harris is available and could make the argument for the defendant.

THE COURT: Yes, but the defendant has indicated he doesn't want Mr. Harris to make it. He doesn't want to waive it, but he doesn't want to testify.

MR. LARREW: I just want to make the record clear, somebody is available to make the record for the defendant.

THE COURT: That's right. You don't want Mr. Harris to make the argument for you?

WILLIE LEE WILLIAMS, THE DEFENDANT: There's nobody available, because he's not here representing me, so how can—

THE COURT: Well, he is here presently. As far as you are concerned, he does not represent you and you do not want him to make the argument for you?

WILLIE LEE WILLIAMS, THE DEFENDANT: Right.

THE COURT: You want to waive the argument, but you don't want to testify.

WILLIE LEE WILLIAMS, THE DEFENDANT: Correct.

The last exchange between the appellant and the trial court would indicate that appellant did indeed affirmatively waive the argument. Whether or not he meant to waive it when he said, "Correct," he in effect waived it when he refused to allow defense counsel to sum up.

■ The defendant in a criminal case has a Sixth Amendment right to a closing argument. *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975); *United States v. King*, 650 F.2d 534 (4th Cir.1981); see also *State v. Page*, 21 Mo. 257, 259 (1855). In *Herring v. New York*,

*United States v. King,* and *State v. Page,* however, the defendant was represented by counsel who was denied or restricted in the opportunity to address the jury. In the case under review appellant's counsel's opportunity to make the closing argument was not denied or restricted in any way except by the appellant himself.

■ That appellant wished to make his own closing argument is not necessarily determinative. If appellant had asserted his right to self-representation (see *Faretta v. California, supra,*) the trial court would have erred in denying appellant the right to make a final argument. Appellant, however, did not exercise this right.

■ The request to address the jury, coming after a trial in which appellant was represented by counsel, was in effect a request for hybrid representation, a combination of self-representation and assistance of counsel. Criminal defendants, however, have no constitutional right to both types of representation. *United States v. Weisz,* 718 F.2d 413, 426 n. 72 (D.C.Cir.1983). Instead, whether to allow hybrid representation is discretionary with the trial court. *United States v. Bennett,* 539 F.2d 45, 49[1] (10th Cir.1976).

In *Ross v. State,* 53 Md.App. 397, 453 A.2d 828 (1983), the appellate court held that no abuse of discretion occurred where the trial court refused the defendant's request, made after the prosecution attorney had concluded the opening portion of the state's final argument, to address the jury on his own behalf.

Similarly, in *State v. Carr,* 13 Wash.App. 704, 537 P.2d 844 (1975) the court held, "If a criminal defendant is represented by counsel and counsel is afforded a full opportunity to argue to the jury, then whether the defendant will be permitted to make a separate, *pro se* closing argument is a matter within the discretion of the trial court." 537 P.2d at 850[17, 18]. No abuse of discretion was found. *Id.* The reasoning in *Ross v. State* and *State v. Carr* is persuasive.

■ To allow the appellant to make his own closing argument would be tantamount to permitting him to testify without being under oath. Inasmuch as appellant, being represented by counsel, had no right to make his own closing argument, the trial court refused to allow this.

■ A trial judge must be allowed to control his courtroom. *State v. Johnson,* 499 S.W.2d 371, 374[5, 6] (Mo.1973); *State v. Elbert,* 471 S.W.2d 170, 173[3, 4] (Mo. 1971). Here the judge was faced with the unusual situation in which the appellant stubbornly and irrationally interfered with and restricted able counsel's representation. Appellant's motives are unknown, although it was obvious he wanted to delay the trial.

Appellant was wise in the ways of trials. He cited statutes by number and referred to past cases in which he had been found guilty by a jury. He tried to influence both his counsel (successfully) and the court (unsuccessfully) in the conduct of the trial. Counsel did the best he could under the circumstances.

Appellant had the right to be represented. If he interferes with that representation, as he did here, he must accept the consequences. To remand this case would only serve to interfere, however slightly, with the administration of justice and the public interest. It would also serve as a signal for other defendants to go and do likewise.

The trial court afforded appellant's counsel a full opportunity to make a closing argument, but appellant rejected this opportunity. The trial court, in extending to appellant the additional opportunity to address the jury pro se provided that he take the witness stand, gave appellant more than that to which he was constitutionally entitled.

The courts in *Ross v. State* and *State v. Carr* found no abuse of discretion where the trial court denied outright the defendant's request to make a pro se closing

argument. This court finds no abuse of discretion in the case under review.

The judgment is affirmed.

STEWART, J., concurs.

KELLY, P.J., concurs in part and dissents in part.

KELLY, Judge, dissenting.

While I concur in the principal opinion's holding that the trial court did not err in failing to inform the accused at the beginning of the trial of his option to proceed pro se and in failing to have him execute a written waiver of counsel pursuant to § 600.051 RSMo 1978, I respectfully dissent from its holding that there was no prejudicial error in conditioning his right to argue his case unless he took the stand and testified.

The trial of this case is a prime example of the problems inherent in trials where a defendant becomes disenchanted with his trial counsel and at the last minute desires a change of counsel prior to going to trial. There is no question that Williams did not want to appear in propria persona. He made that clear prior to the commencement of the trial, following the hearing on his motion to permit his retained counsel to withdraw, when the following dialogue took place:

MR. HARRIS: Robert, are you asking the court to represent yourself?

THE DEFENDANT: No. I am asking the court to give me [sic] continuance to get me an attorney, is what I am asking.

Williams never changed his position. He persisted in demanding that counsel not represent him throughout the course of the trial, refused to consult with him, and rejected any offer of assistance by trial counsel.

On appeal he argues that despite the fact he was told that his counsel was to represent him in the trial of the case, by the time the trial reached the closing argument stage, it was clear that he was being permitted to act completely on his own and, in fact, to represent himself; that if he took the stand in his own defense retained counsel would have participated in the trial, over his objection; that the animosity between himself and his retained counsel had been displayed from the outset; that, therefore, he was denied an opportunity to freely and independently choose to remain silent or to testify, in violation of Article I, § 19 Mo. Const.1945.

The Sixth Amendment to the United States Constitution envisions a truly adversarial criminal trial and even when there is no available theory of defense, the prosecution must be held to its burden to prove each and every element of the crime charged beyond a reasonable doubt. *United States v. Cronic*, —— U.S. ——, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). This same right is recognized in the Constitution of the State of Missouri. Art. I, Sec. 18(a) Mo. Const.1945.

While an accused is not guaranteed a perfect trial, he is guaranteed a "fair trial," and if he is not afforded a fair trial his due process rights are violated. *United States v. Cronic*, supra 104 S.Ct. at p. 2039. Assurance of a fair trial is constitutionally founded on due process. When there has been a denial of a fair trial, the deprivation is of such a fundamental nature that any conviction flowing therefrom must be set aside. A study of this record compels a conclusion that appellant was not afforded the fair trial required by due process.

Initially, neither appellant nor his counsel participated in the selection of the jury. Appellant would not permit his counsel to do so, and although invited to assist in selecting the jury, he refused to do so. The trial court inquired:

THE COURT: Well, at this particular stage of the proceedings, then, what I am asking is: Do you want him (defense counsel) to participate in the selection of this jury?

THE DEFENDANT: No part. No part.

THE COURT: Do you personally, yourself, want to make any strikes?

THE DEFENDANT: I don't want to make any comment on this charge—I don't want this lawyer, Mr. Harris, representing me at all until I can get time enough to hire me another lawyer. All I ask for is sixty days, thirty days to pre-

pare my defense. This lawyer haven't done anything in my case. I specified this and I am expressing it now.

THE COURT: That includes the fact that you don't want to participate in the selection of this jury?

THE DEFENDANT: That includes everything.

The jury was selected from a panel of twenty-four jurors by allowing the state to exercise six peremptory challenges, § 546.-180 RSMo 1978. After the state struck six jurors, the jury was selected from the remaining eighteen prospective jurors, in numerical order, until the trial jury was seated. Three alternates were also voir dired, and the alternate juror was selected by permitting the state to exercise one challenge, § 494.065, RSMo 1979, and then the next juror, in numerical order, was seated as the alternate juror. Neither the accused or his attorney participated in the selection of the jury.

After the trial court read MAI–CR 2d 2.02 the defense attorney asked leave to approach the Bench and objected to the reading of that instruction, which outlined the procedures with respect to opening statements and objections, since he was under instructions by the accused not to make any objections or to take part in the trial and therefore the instruction did not truly reflect what was going to take place during the trial of the case. Counsel also moved for a mistrial. The objection was overruled and the motion for mistrial was denied.

The prosecutor proceeded to make an opening statement and at its conclusion the accused was invited to approach the Bench, where, out of the hearing of the jury, he was asked if he was sure he didn't want to make an opening statement at that time. He replied: "Yes sir. Positive." He was then asked if he didn't want counsel to make one for him. He replied: "I do not." Defense counsel then inquired of the accused whether he wanted him to make any objections to improper questions if any were asked. The accused replied: "I don't want you to make any objections, any com-

ment, or any—no knowledge at all concerning this case." No opening statement was made by either the accused or defense counsel.

The state proceeded with its evidence. No objections were made throughout the entire testimony of the first witness for the state, despite the fact that there were some instances of leading questions interspersed throughout the interrogation. At the conclusion of this direct examination of this witness the following colloquy took place: "MR. HARRIS: Your Honor, this trial at this point is very fast approaching a farce. This deliberate boycott on the part of my client, I think he ought to be advised as to the consequences of it because unless there can be some cross-examination, there's just no way there can be a fair trial that can be imposed and I am under strict guidelines right now from my client not to cross-examine and I think somebody ought to explain the facts of life to Mr. Williams and ask that be done outside of the hearing of the jury, but as I said, this case is fast being [sic] a farce. There's just no way he can get his proper rights, but I am just afraid that any appellate court is going to say he intentionally waived them and I would think he ought to know exactly where he stands.

"THE DEFENDANT: *I haven't intentionally waived no rights.* I have intentionally asked you to be removed from my case for representing me, that's what I have intentionally done. *Any other rights I reserve.*

"THE COURT: H'm. Well, I'm not too thrilled about the situation myself, but do I correctly assume again, Mr. Williams, that you do not wish Mr. Harris to cross-examine this witness?

"THE DEFENDANT: Your Honor, I wish the Court to acknowledge the fact that my case is not being handled properly and I am being denied due process of law under the Sixth Amendment, that's what I want the Court to be aware of.

"THE COURT: Well, I take it from that, you don't want Mr. Harris to cross-examine.

"THE DEFENDANT: I have expressed this numerous of time.

"THE COURT: Well, rather than, rather than run you through this after each direct examination of the witness—

"MR. HARRIS: It's not so much at this point of running us through. It's just at this point this whole proceeding is turning into nothing but a farce. I mean it's a two-day long standing guilty plea and what defense he's got should be asserted and by not asserting them I am just, as I said, I am afraid it's being waived and I think he ought to be made aware that the fact that I am not asking questions may very well come back and haunt him later.

"THE DEFENDANT: *I haven't waived no rights.*

"MR. LARREW: I'm sorry, are we concluded on that part?

"THE COURT: Are we what?

"MR. LARREW: Are we concluded on this part?

"THE COURT: Yes, but I just want to advise Mr. Williams that after you are finished with the direct examination of the other witnesses, I am not going to call for a conference here at the Bench and ask him again whether or not he wants to cross-examine.

"MR. HARRIS: You didn't call for this one. I called for it.

"THE COURT: No, I know.

"THE DEFENDANT: I would like to have this witness cross-examined but not by Mr. Harris.

"THE COURT: Well, at this point you are going to have him cross-examined by Mr. Harris or no one.

"THE DEFENDANT: Did I refuse to have him cross-examined by Mr. Harris?

"THE COURT: Okay, and I assume, I guess that you don't want any witnesses who testify cross-examined by Mr. Harris.

"THE DEFENDANT: No.

"THE COURT: Well, here, there are some other witnesses I think that the state's going to call and after the direct examination of those witnesses, rather than, I know I didn't call for this conference but I am not going to call for any conference after the testimony of a witness to determine whether or not you want to cross-examine them. If you change your mind and you do want to cross-examine some witness, you just let me know.

"THE DEFENDANT: I would like to have this witness cross-examined expertly—

"THE COURT: Well,—

"THE DEFENDANT:—by a competent attorney.

"THE COURT: That's Mr. Harris.

"THE DEFENDANT: But he is no longer representing me, Your Honor. He is not representing me.

"THE COURT: Well, that remains to be seen, Mr. Williams. I have determined that he is representing you and you've indicated that he is not, so for the purposes of this trial as far as I'm concerned he is representing you.

"THE DEFENDANT: But I hired him with my money.

"THE COURT: Yes.

"THE DEFENDANT: With my hard earned money I hired him. I have the right to choose and fire and I don't want the man representing me.

"THE COURT: I take the position—

"THE DEFENDANT: How can the Court enter into a contract with a man I made personally with the attorney?

"THE COURT: I am taking the position that you waited too long to advise the Court that you wanted to fire him; that this setting date was made and the case was ready to go to trial and I have determined that he is your attorney.

"THE DEFENDANT: But I didn't wait too long. I didn't have access to my attorney. I have been trying to get in touch with him for the last four months, so how did I wait too. long? I've been writing him and phoned his office, leaving a message with his secretary for the last four months.

"THE COURT: With who?

"THE DEFENDANT: With Mr. Harris.

"THE COURT: Mr. Harris advised me that the first time you told him you didn't want him to represent you was this past Saturday, a couple of days ago.

"THE DEFENDANT: Just a minute. Excuse me one minute.

"MR. LARREW: Off the record.

"[Off-the-record discussion].

"THE DEFENDANT: Here is a letter from out of town, a law firm that I've been trying to get to represent me. She didn't give me advice or try to get in touch with the other lawyers to try to represent me. This man wouldn't get off the case. That's why I couldn't get another lawyer to enter an appearance on the case. My girlfriend wrote me she had been trying to get in touch with Mr. Harris for the longest. He told her I had sixteen years.

"MR. HARRIS: There's no way I would have told him.

"THE DEFENDANT: That's what she wrote and told me.

"Mr. HARRIS: Okay, I'm not going to sit here and argue.

"THE COURT: Well, okay.

"THE DEFENDANT: I waited too long? The responsibility is not on me. I can't leave the jail. The only thing I can do is write and call and have somebody to go by his office to come see me. I don't have no alternative.

"THE COURT: Well, okay, Mr. Williams. It may turn out that—

"[The defendant shows document to the court at the Side Bar Bench].

"THE COURT: What is this?

"MR. HARRIS: That is part of my fee

"THE DEFENDANT: Partial fee, a hundred fifty dollars ($150).

"THE COURT: Oh, okay. All right.

"THE DEFENDANT: Plus two hundred.

"THE COURT: Well, it may turn out that you are right about all this and this whole thing may be a farce. I dont't know. But in my opinion, at the moment it is not and

we are going to go ahead and finish it. You will have every right to appeal and do whatever you want after that, but as I said before now, I am not going to call you up any more after the other witnesses testify and if you want to cross-examine any of the witnesses you can signify it by either letting me or Mr. Harris know. Otherwise, I will assume you do not want him to cross-examine them.

"THE DEFENDANT: You are assuming correct.

"THE COURT: And we are going to recess now until 9:30 tomorrow morning.

"MR. LARREW: Judge, let me move for admission of State's Exhibits 1 through 6 and 1 through 8 inclusive.

"THE DEFENDANT: I want to object to admitting that evidence.

"THE COURT: You want to object to it?

"THE DEFENDANT: That's right. That's right. I've already filed this motion, object to all this evidence. I want to have this motion filed with the Court objecting to all that, what he's talking about.

"THE COURT: Well, I told you this morning was the first time that I had seen this.

"THE DEFENDANT: The court can get a copy of that.

"THE COURT: I don't know anything about it and as far as right now, I will overrule your motion, your objection to this evidence, and State's Exhibits 1 through 8 will be received.

"[State's Exhibit 1 through 8 received in evidence]

"THE DEFENDANT: I just want it to be a matter of record, Your Honor.

"THE COURT: Okay."

[Emphasis supplied]

No cross-examination of this witness was conducted.

At this stage of the trial defense counsel called up a motion for psychiatric examina-

tion of the accused he had filed earlier that morning.[1] This motion was denied.

The next state's witness was a Mrs. Thompson. Her testimony was the most damaging to accused because she was the only witness to testify she saw the box containing the ring in the possession of the accused. Her testimony was uninterrupted

1. THE COURT: Did you want to say anything with regard to this Motion for Psychiatric Examination?

MR. HARRIS: Yes, Your Honor. This morning I filed a motion to have Mr. Singleton examined. In the course of my dealings with him and especially in the course of the last couple of days, he's acted in a bizarre manner. He's got what we would normally call a reality avoidance system. When he's told what's going on, what his legal rights are and what the law is, he refuses to admit it, he tells me that I don't know what I'm talking about.

Furthermore, at this point he refuses to follow any legal advice. His behavior is almost suicidal bent, knowing that there can be only one outcome of this mock and farce that we are going through right here and I mean there's no way when he plays games like this, that it's either a very cunning plan of a very brilliant mind that's trying to completely mess up the legal system or the man is sick. I think he's sick and I think he ought to be examined before we proceed any further.

I would further state that I cannot go into conversations other than to show, say that he has shown certain persecutorial delusions and he's indicated things to me that would show a certain type of paranoia and I just don't think he is competent at this point to proceed to trial any further than we have at this point, probably not as far as we have.

MR. LARREW: Judge, the state obviously opposes the motion at this time as being rather untimely, and furthermore, I don't think on the basis of the bare allegations in the motion the defendant should be able to take advantage or gain advantage out of what he really wants to do and that is put this trial off and I think that while that is not the purpose of Mr. Harris' motion, that would be the result if this motion is granted and would be in accord with what the defendant has done and attempted to do throughout this trial. I don't think the allegations would support the granting of this relief and I would hope the court would deny the motion to continue this trial.

MR. HARRIS: Your Honor, all I can say is the leading case on this is a case that arose here in St. Louis County and went all the way to the United States Supreme Court and that is the case of *Drope v. Missouri* and in that case the Supreme Court of the United States indicated that the court, having seen the bizarre activities which occurred in part within his own courtroom, had a duty sua sponte without any motion to order psychiatric examination to determine competency. In that case there was certain bizarre activity in the courtroom that re-

sulted in attempted suicide overnight during the recess, but they said the court could see the bizarre activity themselves and because of the way the man was acting he ought to, and I think a lot of what I am saying has occurred within the courtroom. Certain of it has not and that deals with, as I said, these personal conversations I have had where he has shown delusions of persecution, but a number of the rest of it has actually occurred within your sight.

MR. LARREW: Judge, at this point we see nothing like that that would suggest the man is ready to commit suicide or anything like that. His behavior may very well be calculated to accomplish exactly what he is trying to do right now. For that reason I don't think there's enough or anything before the court to make a determination that he is unfit to stand trial.

MR. HARRIS: I'm not saying it couldn't be accomplished within a day. There is a "Bliss" and there is "Arsenal Street" and if they have available doctors normally it takes about two hours to make one of these competency examinations. I don't know there are available doctors.

THE COURT: Well, in the first place we all know that that is a little absurd. I'm sure we couldn't get him examined—

MR. HARRIS: I don't know the schedules.

THE COURT:—today. Well, from past experience we know that would be well-nigh impossible.

MR. HARRIS: Okay.

THE COURT: As far as his behavior in the courtroom. I haven't really seen anything that I would consider extremely bizarre about it. I don't know whether Mr. Williams is thinking about an appeal or about a 27.26 Motion later on or not. He may be.

MR. HARRIS: He may be.

THE COURT: But certainly, I don't think that his behavior has been what I would consider bizarre, so I'm going to overrule the motion at this time.

MR. HARRIS: Okay. Okay

THE DEFENDANT: Your Honor, may I speak?

THE COURT: Yes. You want this on the record?

THE DEFENDANT: Yes. Any comment Mr. Harris had pertaining to my case, I would like it to be known he is acting solely on his own as an officer of the court and not in my behalf.

THE COURT: I think you have made it pretty clear that you don't intend for him to act in your behalf.

THE DEFENDANT: Yes, sir. Thank you.

THE COURT: Okay.

THE DEFENDANT: Thank you.

by any objections by accused or his counsel.

The trial court, despite its previous directive to the accused that his counsel alone could conduct the cross-examination of the state's witnesses, permitted the accused to cross-examine Mrs. Thompson. The accused, unaided by defense counsel, conducted a cross-examination which, except for one question, was neither argumentative nor disruptive of accepted trial procedure.

The accused also conducted cross-examination of the next two state's witnesses, and did so without creating any disturbance. Counsel did not assist him in the cross-examination of either of these state's witnesses.

When the state rested its case the following occurred out of the presence of the jury:

THE COURT: Mr. Williams, I, I know that I've indicated to you that as far as I was concerned Mr. Harris was your attorney and you were represented and therefore probably only he should ask questions and give final arguments and things like that, but since it's a little unusual, I have allowed you to ask some questions. I guess at this point if I were consistent I would say that you wouldn't be allowed to present any evidence or to testify without Mr. Harris' okay. Do you, did you have any intentions of presenting any evidence or, or you weren't thinking about testifying yourself, were you?

There followed some discussion between the accused and the trial court concerning some motions, including one for judgment of acquittal at the close of the state's case. All motions were overruled. During the discussion of one of these motions defense counsel attempted to clarify what was a motion to suppress some evidence at the preliminary hearing, on the grounds there was insufficient evidence to bind the accused over to the circuit court; other than that one instance, defense counsel did not participate in these discussions. Then the following occurred:

THE COURT: Mr. Williams, there's been some indication you might have some idea about arguing your case. Is that—

WILLIE LEE WILLIAMS, THE DEFENDANT: Yes, Your Honor, but I don't wish to take the stand.

THE COURT: You don't wish to take the stand?

WILLIE LEE WILLIAMS, THE DEFENDANT: No, sir.

THE COURT: *Well, unless you take the stand and testify, I am not going to let you argue your case.*

WILLIE LEE WILLIAMS, THE DEFENDANT: *Well, I just want the record to show that I am not waiving my argument, but I don't wish to take the stand.*

THE COURT: Okay.

MR. LARREW: I think the record should further reflect that Mr. Harris is available and could make the argument for the defendant.

THE COURT: Yes, but the defendant had indicated he doesn't want Mr. Harris to make it. *He doesn't want to waive it, but he doesn't want to testify.*

MR. LARREW: I just want to make the record clear, somebody is available to make the record for the defendant.

THE COURT: That's right. You don't want Mr. Harris to make the argument for you.

WILLIE LEE WILLIAMS, THE DEFENDANT: There's nobody available, because he's not here representing me, so how can—

THE COURT: Well, he is here presently. As far as you are concerned, he does not represent you and you do not want him to make the argument for you?

WILLIE LEE WILLIAMS, THE DEFENDANT: Right

THE COURT: You want to waive the argument, but you don't want to testify.

WILLIE LEE WILLIAMS, THE DEFENDANT: Correct

(Emphasis supplied)

The state presented its argument and no argument was made for the defense. The cause was submitted to the jury and a verdict of guilty returned.

The principal opinion, in my opinion, misinterprets the accused's position when it holds that he "did indeed affirmatively waive the argument." He made it clear throughout the trial he was not waiving any of his constitutional rights. The majority has seized upon what is, in my opinion, a misstatement of the accused's position after a leading question asked by the court of the accused suggesting to him that he waived argument, whereas he had just immediately prior thereto, during the same discussion, insisted he was not waiving argument. It was made clear to him that unless he took the stand, and testified he could not argue the case. The sentence seized upon by the majority to constitute a waiver merely demonstrates how confused the accused was when he answered a leading question propounded to him by the court.

The principal opinion recognizes that an accused in a criminal case has a due process right to a closing argument. *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975); *United States v. King,* 650 F.2d 534 (4th Cir.1981); *State v. Page,* 21 Mo. 257, 259 (1855). Although the court in *Herring* acknowledged that the right to argument may be waived, it did not discuss the method of waiver to be employed. The general rule is that a waiver is not found unless the record shows "an intentional relinquishment or abandonment of a known right or privilege." I believe the record in this case clearly shows the accused had no intention of waiving his right to argument.

The principal opinion categorizes defense counsel's participation in this trial as "hybrid representation." I am of the opinion it did not rise to that dignity. Although able trial counsel was present throughout trial his ability was limited by the accused's insistance that he take no part in the conduct of the trial and, except for the few instances I have excerpted from the record,

he did not. Furthermore, even assuming, arguendo, that appellant's counsel's participation in the trial could be categorized as "hybrid representation," I would hold that the trial court abused its discretion by predicating the exercise of his due process right to argue upon his waiver of his Fifth Amendment right not to testify.

I am sympathetic to the trial judge caught in this position when he is faced with an accused who seeks to change trial counsel just prior to the commencement of trial. I am also aware of the line of authority holding that an accused is not entitled to counsel of his choice in all instances. I also recognize the necessity for the trial court to control and move its docket. However, in my opinion, the question presented here demonstrates a breakdown in the adversarial process where the accused is required to make an election between his constitutional right not to testify and his due process right to argument. Accused, except for his adamant insistence that counsel *should not represent him,* did not demonstrate that he could not have conducted a proper argument. Even if he had no viable defense, he had a due process right to assert such defense as he might have, *Herring v. New York,* supra, or to call attention to the jury any weakness in the state's case that might exist.

For these reasons I would reverse and remand this judgment of conviction to the circuit court for a new trial, and I respectfully dissent from the holding of the principal opinion.