[No. 14675-1-I.   Division One.   December 22, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. PATRICK WILLIAM HANSEN, *Appellant.*

*Patrick William Hansen,* pro se, and *Helen A. Anderson* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Barbara L. Linde, Deputy,* for respondent.

SCHOLFIELD, C.J.—Patrick W. Hansen appeals from his conviction for first degree kidnapping and rape while armed with a deadly weapon, arguing that the court unconstitutionally commented on the evidence and erred by refusing to give instructions on unlawful imprisonment and diminished capacity. In a pro se brief, Hansen also assigns error to the use of the deadly weapon charge to enhance his sentence. We affirm the conviction, but remand for resentencing on the first degree rape charge.

## FACTS

On the morning of June 1, 1983, Hansen forced a female jogger into his automobile at gunpoint. During the next several hours, Hansen sexually assaulted the woman repeatedly and injected himself with several large doses of cocaine, while they proceeded on a circuitous route through the Seattle area, finally ending up on I-90, a few miles from Cle Elum, Washington.

During the course of the abduction, Hansen was generally lucid and took steps to avoid detection and apprehension, but often his behavior was bizarre and irrational. The victim was finally able to convince Hansen that she needed

medical attention, and was then able to alert hospital authorities that she had been kidnapped. Following his arrest, Hansen told police he had found the woman at a rest area near Snoqualmie Pass, doubled over and asking for help. He said he overheard her say at the hospital that she had been kidnapped, so he ran.

Hansen testified at trial, relating his long history of drug abuse, particularly cocaine and Dilaudid. Hansen told the court that between December 1982 and June 1983, he had at least 40 different sexual partners, who exchanged their favors for cocaine. He testified that, whenever he injected himself with cocaine, one of these women would perform fellatio on him.

Hansen recounted in detail a 36- to 48-hour binge preceding the abduction, with the same pattern of drug injection followed by sexual gratification by an obliging female. On the morning of June 1, Hansen testified, he took a large injection and nearly overdosed. His next clear recollection was buying gasoline in Kirkland. He testified he did not think it at all unusual when he noticed the victim in his car; throughout the incident, he believed he and the woman were getting along fine and had a good rapport. Hansen denied any intent to kidnap or rape her.

Dr. Lawrence Halpern, an expert in neuropharmacology, testified that Hansen displayed behavior consistent with a condition called "end use cocaine run". Halpern explained that the injection of cocaine and Dilaudid over an extended period of time causes an excess of dopamine in the brain, producing schizophrenia—an otherwise naturally occurring dopamine excess disease. An individual in end stage cocaine use becomes detached from reality and is unable to perform complex intellectual tasks.

Halpern also described a phenomenon called "state dependent learning", where an individual couples certain behavior learned while under the influence of a narcotic with the use of that drug, in Hansen's case, intravenous cocaine use with sexuality. Halpern opined that, during an end use cocaine run, Hansen would be unable to distinguish

whether his sexual partner was acting voluntarily or involuntarily. He admitted on cross examination, however, that much of Hansen's behavior during the abduction showed an appreciation of the fact that his victim was not a consenting partner.

A clinical psychologist, Dr. Thomas Green, also testified for the defense. Green stated that, based upon his psychological test, the amount and purity of the cocaine ingested by Hansen, the consequent lack of sleep and Hansen's "state dependent learning" response, in his expert opinion, Hansen acted automatically, not intentionally, during the abduction.

Green was cross–examined concerning the disparity between the amount of Hansen's daily cocaine use that he assumed for the purposes of his written report and the amount he based his opinion on at trial. He responded that the precise figure did not really matter because "you can take them all, two, three, four grams, I don't think it makes much difference in terms of the effect." The prosecutor then asked Green if the "history that [he] accepted as true was that of an average of two, three [or] four grams a day cocaine use[.]" Green replied:

I think the answer to that question is that I'm not the pharmacologic expert, I'm the behavior expert. For behavioral purposes, the average and range that I gave are fully consistent with what would be necessary to make an accurate behavioral assessment.

The following colloquy then occurred:

THE COURT: She didn't ask for your expertise. She asked you a simple question, whether it was for the period of time before June 1st it amounted to two grams a day. Either yes or no?

THE WITNESS: Thank you, your Honor. The answer is no.

THE COURT: He's changed.

At the time, defense counsel raised no objection to the court's remarks.

At the close of the evidence, the court instructed the jury on first and second degree kidnapping and rape, but

refused to instruct the jury that unlawful imprisonment was also a lesser included offense of first degree kidnapping. The court also instructed the jury that it could consider evidence of Hansen's voluntary drug intoxication when determining whether he possessed the requisite intent to commit the crimes charged, but refused to give Hansen's proposed instructions on diminished capacity.

Hansen was convicted of first degree rape and kidnapping, and by special verdict of being armed with a deadly weapon, a firearm.

## LESSER INCLUDED INSTRUCTIONS

The State concedes that an instruction on unlawful imprisonment was both factually and legally supported by the record, but argues that the trial court's failure to give the instruction was harmless since the jury rejected the intermediate offense of second degree kidnapping. We agree.

A defendant is entitled to an instruction on a lesser included offense if each element of the lesser crime is a necessary element of the crime charged and the evidence in the case supports the inference that the lesser crime was committed. *State v. Workman,* 90 Wn.2d 443, 447–48, 584 P.2d 382 (1978). There is no dispute in the case at bar that an unlawful imprisonment instruction should have been given. The only question is whether the trial court's failure to do so requires reversal of Hansen's conviction.

In *State v. Parker,* 102 Wn.2d 161, 683 P.2d 189 (1984), a defendant convicted of felony flight assigned error to the court's refusal to instruct on the lesser included offense of reckless driving. We affirmed the conviction, reasoning that the jury's guilty verdict constituted a rejection of defendant's intoxication defense, and therefore, he would have been convicted even had the instruction been given.

The Supreme Court reversed, however, noting that this court:

> ignore[d] the fact that the jury had no way of using the intoxication evidence short of outright acquitting Parker,

because they were never told that the option of the lesser included offense existed.

*Parker,* at 166. The court held that Parker had an absolute right to have the jury consider the lesser included offense, stating:

This court . . . has never held that, where there is evidence to support a lesser included offense instruction, failure to give such an instruction may be harmless.

*Parker,* at 164.

Hansen maintains that, like *Parker,* the jury in the instant case had no way of using his intoxication and diminished capacity defenses short of acquitting him. As the State points out, however, in *Parker* and the other cases relied upon by Hansen, no instruction at all was given on lesser included offenses, while here, the jury was instructed on the lesser crime of second degree kidnapping. Therefore, unlike *Parker,* the jury was not presented with an all or nothing choice.

The question then becomes whether the court's error in refusing to instruct on unlawful imprisonment was obviated by the jury's rejection of the intermediate offense of second degree kidnapping. This precise issue has not been addressed in Washington, thus we adopt the reasoning used by courts in other jurisdictions.

An error in failing to instruct on a lesser included offense does not require reversal if the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. *People v. Ramkeesoon,* 39 Cal. 3d 346, 702 P.2d 613, 616, 216 Cal. Rptr. 455 (1985). For example, in the prosecution for first degree murder in *State v. White,* 144 Ariz. 245, 697 P.2d 328 (1985), the jury was instructed on the lesser included offense of second degree murder, but not on manslaughter. After his conviction for first degree murder, the defendant appealed claiming that his conduct while intoxicated amounted to recklessness, and thus the court erred in failing to instruct the jury on manslaughter.

The court found that, by convicting the defendant of first rather than second degree murder, the jury rejected the defendant's claim that his intoxication was such as to lessen his culpability, and therefore, the failure to instruct on manslaughter was harmless. *White*, at 247. "In other words," the court stated, "by finding defendant guilty of the highest offense, to the exclusion of the immediately lesser–included offense, second degree murder, the jury necessarily rejected all other lesser–included offenses." *White*, at 247.

In the case at bar, the jury was instructed on the intermediate offense of second degree kidnapping. If the jury believed that Hansen was less culpable because of his drug–induced mental disorder, logically it would have returned a conviction on the lesser crime of second degree kidnapping. Second degree kidnapping requires only an intent to abduct. To convict Hansen of first degree kidnapping, the jury had to find he intended to abduct the victim with the intent to facilitate the rape. In our view, the jury's verdict on the highest offense was an implicit rejection of all lesser included offenses that could have been based upon Hansen's diminished capacity defense.

Moreover, all of Hansen's diminished capacity evidence related to his intent with regard to the sexual offenses he committed. The jury was instructed on second as well as first degree rape. That he was convicted of first degree rape makes it even more clear the jury rejected the diminished capacity defense. The court's failure to instruct on unlawful imprisonment was therefore harmless error.

### DIMINISHED CAPACITY INSTRUCTION

Hansen contends that it was reversible error not to give a diminished capacity instruction where, as here, there was substantial evidence to support it. We disagree.

Diminished capacity instructions are to be given to the jury

> whenever there is substantial evidence of such a condition and such evidence logically and reasonably connects

the defendant's alleged mental condition with the inability to possess the required level of culpability to commit the crime charged.

*State v. Griffin,* 100 Wn.2d 417, 419, 670 P.2d 265 (1983). In *Griffin,* no diminished capacity instruction was given, despite evidence that the defendant suffered from a catatonic type of paranoid schizophrenia as well as chronic alcoholism. Accordingly, the court held the failure to instruct on diminished capacity was reversible error, noting that

[g]eneralized instructions on criminal intent are not sufficient to apprise a jury of mental disorders which may diminish a defendant's capacity to commit a crime.

*Griffin,* at 420.

In *State v. Edmon,* 28 Wn. App. 98, 621 P.2d 1310, *review denied,* 95 Wn.2d 1019 (1981), the court held it was reversible error to exclude psychiatric evidence that the defendant suffered from psychological disorders bearing upon his ability to form specific intent.

■ Although each side is entitled to have the jury instructed on his theory of the case if there is evidence to support it, *State v. Theroff,* 95 Wn.2d 385, 622 P.2d 1240 (1980), the court's instructions are sufficient if they permit each party to argue his side of the case, are not misleading, and when read as a whole, properly inform the jury of the applicable law. *State v. Mark,* 94 Wn.2d 520, 618 P.2d 73 (1980).

Without question, substantial evidence was presented in the case at bar to support Hansen's theory that his drug intoxication produced a mental disorder—schizophrenia—that bore upon his ability to form the requisite intent to commit the crimes charged. However, unlike *Edmon,* the trial court admitted psychiatric evidence on that issue. Unlike *Griffin,* moreover, where no diminished capacity instruction whatever was given, here the jury was instructed that it could consider how Hansen's drug intoxication affected his ability to form the requisite specific

intent.[1]

Hence, we find that the instructions given by the trial court were sufficient to permit Hansen to argue, based on the evidence, his theory of the case. The court did not err, therefore, by refusing to give the additional instructions on diminished capacity that Hansen proposed.

### COMMENT ON THE EVIDENCE

Hansen contends that, by telling the jury that Dr. Green had changed his testimony, the court commented on the evidence, thus undermining the witness's credibility, and hence, his defense. We find that the trial court's remarks did not constitute an unconstitutional comment on the evidence.

The purpose of prohibiting judicial comments on the evidence is to prevent the jury from being influenced by the trial judge's opinion of the evidence submitted. *State v. Jacobsen*, 78 Wn.2d 491, 495, 477 P.2d 1 (1970); Const. art. 4, § 16. Since a comment on the evidence violates a constitutional prohibition, the issue may be raised for the first time on appeal. *State v. Lampshire*, 74 Wn.2d 888, 893, 447 P.2d 727 (1968).

However, a statement by the court will constitute a comment on the evidence only if the court's attitude toward the *merits* of the case or the court's evaluation relative to a *disputed issue* is inferable from the statement. *State v. Louie*, 68 Wn.2d 304, 313–14, 413 P.2d 7 (1966), *cert. denied*, 386 U.S. 1042 (1967); *State v. Carr*, 13 Wn. App. 704, 710, 537 P.2d 844 (1975). Thus, "adverting to or assumption of an admitted or undisputed peripheral fact does not constitute constitutionally inhibited comment." *State v. Louie, supra* at 314.

---

[1]The trial court's instruction 8 to the jury read: "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition, but whenever the actual existence of any particular mental state is a necessary element to constitute a particular kind or degree of crime, the fact of intoxication may be taken into consideration in determining such mental state.

"Intoxication may result from ingestion of alcohol or drugs or both."

In the instant case, Dr. Green himself stated that whether Hansen was using 2, 3 or 4 grams of cocaine daily was irrelevant to his evaluation of the effect it had on his ability to form specific intent. Thus, the court's remark went to a peripheral and unimportant issue—the quantity of cocaine use upon which Green had based his expert opinion. It was not, therefore, a prohibited comment on the merits of a disputed issue.

Moreover, the court's remark, "He's changed", was ambiguous and for that reason quite meaningless. The absence of any reaction at the time by defense counsel would seem to suggest the incident was considered inconsequential. We are satisfied beyond a reasonable doubt that the court's remark did not change the outcome in any event. The evidence of guilt was overwhelming.

Finally, relying upon *State v. Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978), Hansen maintains in his pro se brief that his use of a firearm could not serve to enhance his sentence since use of a deadly weapon was also a necessary element of the crimes charged.[2]

In the absence of clear evidence of a contrary legislative intent, the *Workman* court applied the "rule of lenity" and held that the firearm statute, former RCW 9.41.025, could not be applied to a conviction for first degree robbery because use of a deadly weapon was an element of the underlying crime. *Workman*, at 454.

In 1981, the Legislature clarified its intent, specifically amending former RCW 9.41.025 in pertinent part as follows:

> Any person who shall commit or attempt to commit any felony, . . . which includes as an element of the crime the fact that the accused was armed with a firearm, . . . shall upon conviction, in addition to the penalty

---

[2]Additionally, Hansen assigns error in his brief with regard (1) to the refusal of the trial court to give his proposed instruction on knowledge, (2) to the sufficiency of the evidence supporting the deadly weapon special verdict, and (3) to the effectiveness of assigned counsel. We have carefully reviewed the defendant's arguments and find them to be without merit.

provided by statute for the crime committed without use or possession of a firearm, be imprisoned as herein provided:

Laws of 1981, ch. 258, § 1, p. 1065 (effective July 26, 1981).[3]

The clear import of the statutory amendment was to allow an enhanced sentence for any felony committed with a firearm even where the use of a deadly weapon was an element of the crime charged. *State v. Woods,* 34 Wn. App. 750, 756–57, 665 P.2d 895 (1983). Hansen's argument must, therefore, fail.

The judgment of the trial court is affirmed.

COLEMAN and WEBSTER, JJ., concur.

After modification, further reconsideration denied May 18, 1987.

[Nos. 16914–9–I; 18305–2–I;   Division One.   December 22, 1986.]
18306–1–I; 19035–1–I.

[3]Hansen was sentenced prior to the repeal of this statute on July 1, 1984.