IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31506-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RICHARD EDWARD FENTON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Richard Fenton appeals his convictions for unlawful possession of a controlled substance (methamphetamine) and unlawful possession of a controlled substance (marijuana) with intent to deliver. He contends the trial court erred in concluding that he did not have automatic standing to challenge the vehicle stop of a third party. He also claims he received ineffective assistance of counsel when his attorney failed to propose an unwitting possession instruction and that instructional error requires reversal of his possession of methamphetamine conviction. In his statement of additional grounds for review (SAG), Mr. Fenton alleges police did not have a search warrant for his apartment. Finding no error, we affirm.

## FACTS

During the evening of October 5, 2011, city of Kennewick detectives Roman Trujillo and Shirrell Veitenheimer were conducting undercover surveillance of Mr. Fenton's apartment. Between 10:00 p.m. and 1:00 a.m., they saw about 8 to 10 people enter and leave Mr. Fenton's apartment. All of these people stayed between 5 and 25 minutes. Around midnight, the detectives saw a woman, later identified as Marisa Fuentes, enter Mr. Fenton's apartment. She returned to her car within about five minutes and retrieved from the trunk of her car a grocery sack with unidentified contents about the size of a football. She took the bag to Mr. Fenton's apartment and then left with an empty sack. Detective Trujillo alerted other detectives to the incident and asked them to stop Ms. Fuentes.

Detective Isaac Merkl stopped Ms. Fuentes and questioned her. She admitted that she had just delivered marijuana to Mr. Fenton's apartment. Based on this information, detectives obtained a search warrant for Mr. Fenton's apartment. Upon execution of the warrant, police found Mr. Fenton in a bedroom. During the search of Mr. Fenton's apartment, police found hydrocodone pills, two pipes with methamphetamine residue, marijuana, and scales. The State charged Mr. Fenton with unlawful possession of a controlled substance, methamphetamine, and unlawful possession of marijuana with

intent to deliver.

Before trial, Mr. Fenton moved to suppress evidence under CrR 3.6, arguing that police lacked probable cause to stop and detain Ms. Fuentes, and that he had automatic standing to challenge the legality of the stop. The State responded that Mr. Fenton lacked standing to challenge the stop against Ms. Fuentes because "the seizure complained of was not a seizure of anything over which the defendant might have claimed dominion." Clerk's Papers (CP) at 12. It also pointed out that a judge had recently determined that the police stop and questioning of Ms. Fuentes was proper.

The court denied the motion, concluding, "[t]he defendant does not have automatic standing to complain of the seizure of drugs possessed illegally within his apartment." CP at 84. In its oral decision, the court noted, "I don't know that the fruits of the search would be considered [Ms. Fuentes's] comments made in an interview given after *Miranda*[1] warnings." Report of Proceedings (RP) (May 2, 2012) at 13. In its written findings, the court found in part: (1) "[t]he application of the rule of automatic standing is limited to situations where the defendant is aggrieved by a search of premises on which he is on legitimately and the seizure of physical items on that premises," (2) "[i]n this application that would mean the car in which Ms. Fuentes was stopped," and (3) "[s]ince

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

automatic standing applies to things arguably possessed by the defendant, automatic

standing does not apply in the instant case." CP at 84.

After trial, a jury found Mr. Fenton guilty as charged.

## ANALYSIS

*Standing.* We first address whether the trial court erred in concluding that Mr.

Fenton did not have automatic standing to challenge the stop and questioning of Ms.

Fuentes. "[R]esolution of a motion to suppress requires a two-part inquiry: (1) whether a

defendant has standing to challenge the police conduct; and (2) whether the police

conduct is contrary to the constitutional protections and guarantees." 12 ROYCE A.

FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 2402,

at 533 (3d ed. 2004). We review conclusions of law following a suppression hearing de

novo. *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999).

Mr. Fenton argues that he has automatic standing to raise a violation of Ms.

Fuentes's Fourth Amendment rights because the offenses with which he is charged are

possessory offenses and he was in possession of the contraband at the time of the search.

He also claims that there was a direct relationship between the stop and the evidence

seized from his apartment because Ms. Fuentes's statement formed the basis of the search

warrant for his apartment. The State responds that the automatic standing doctrine does

4

not apply because Mr. Fenton did not have a possessory or privacy interest in the information Ms. Fuentes provided to law enforcement and the challenged police conduct is not sufficiently related to the contraband found in Mr. Fenton's apartment.

Initially, we note the issue of standing is moot. An appeal is moot where it presents purely academic issues and where the court cannot provide the relief originally sought. *IBF, LLC v. Heuft*, 141 Wn. App. 624, 630-31, 174 P.3d 95 (2007) (quoting *Josephinium Assocs. v. Kahli*, 111 Wn. App. 617, 622, 45 P.3d 627 (2002)). In an unpublished decision, this court recently held that the police had reasonable suspicion to justify the stop of Ms. Fuentes. *State v. Fuentes*, noted at 179 Wn. App. 1030, 2014 WL 546587, *review granted*, 328 P.3d 904 (2014). Thus, even assuming Mr. Fenton had standing to challenge the stop of Ms. Fuentes, his argument fails regarding the merits of the suppression motion. Despite the fact that the issue of standing is moot, we address Mr. Fenton's argument.

To assert automatic standing, a defendant (1) must be charged with a possessory offense and (2) be in possession of the subject matter at the time of the search or seizure. *State v. Jones*, 146 Wn.2d 328, 332, 45 P.3d 1062 (2002). Additionally, our Supreme Court has declared that the automatic standing doctrine applies only when the defendant is asserting that his or her own rights were violated: "Inherent in the conditions for

5

automatic standing is the principle that the 'fruits of the search' bear a direct relationship to the search the defendant seeks to contest." *State v. Williams*, 142 Wn.2d 17, 23, 11 P.3d 714 (2000).

*Williams* is instructive here. In that case, police officers went to the door of an apartment where they expected to find Harlan Williams, who had an outstanding warrant for his arrest. The apartment's tenant opened the door and told the officers they could look inside for Mr. Williams, who was an overnight guest. They found Mr. Williams and arrested him. In a search incident to arrest, officers found heroin in Mr. Williams's pocket. The superior court concluded Mr. Williams had automatic standing to assert the tenant's privacy interests. *Id.* at 19-20.

On appeal, the Supreme Court held automatic standing did not apply. The court stated that while Mr. Williams had standing to challenge the search of his person, he lacked standing to challenge the police entry into a third party's apartment to serve an arrest warrant on him. *Id.* at 23. The court emphasized that "[a]utomatic standing is not a vehicle to collaterally attack every police search that results in a seizure of contraband or evidence of a crime." *Id.*

The court explained that the purpose of the automatic standing rule is to protect defendants forced to choose between their respective rights under the Fourth and Fifth

Amendments:

> We cannot agree that the automatic standing rule as originally conceived by the Supreme Court would have any application where there is no conflict in the exercise of his Fourth and Fifth Amendment rights. Moreover, as expressed . . . in *Simpson*, the automatic standing rule may not be used where the defendant is not faced with "the risk that statements made at the suppression hearing will later be used to incriminate him."

*Id.* (quoting *State v. Simpson*, 95 Wn.2d 170, 180, 622 P.2d 1199 (1980)).

Applying these criteria, Mr. Fenton lacks standing to challenge the stop of Ms. Fuentes. Although the crimes at issue are possessory offenses, the nexus between the challenged police conduct and the evidence recovered from Mr. Fenton's apartment is too indirect to give Mr. Fenton standing to raise a Fourth Amendment challenge to the stop and questioning of Ms. Fuentes. Mr. Fenton was not present during the stop and no physical items or contraband related to Mr. Fenton were removed from Ms. Fuentes's car. Because he was not present at the stop, Mr. Fenton would not be able to give any relevant statements in relation to the stop and would not be placed in the position of having to claim ownership of contraband or admit to any criminal conduct. As such, he was not faced with the constitutional dilemma of making statements at a suppression hearing that could later be used to incriminate him. *Id.* Ultimately, Mr. Fenton's possession of contraband was wholly unrelated to whether police lawfully stopped Ms. Fuentes. Given this fact, the court did not err in concluding that he lacked standing to

collaterally attack the stop and the questioning of Ms. Fuentes.

The court did not err in concluding that Mr. Fenton lacked standing to collaterally attack the stop of Ms. Fuentes.

*Instruction—Comment on the Evidence.* Mr. Fenton next argues that jury instruction 8 constituted an improper comment on the evidence. He claims that "[b]y instructing the jury that residue was possession, the court commented on the evidence by taking away from the jury the disputed fact of whether Mr. Fenton possessed methamphetamine thereby relieving the State of the burden of proving that fact." Br. of Appellant at 20.

We review the court's choice of jury instructions for an abuse of discretion. *State v. Lucky*, 128 Wn.2d 727, 731, 912 P.2d 483 (1996), *overruled on other grounds by State v. Berlin*, 133 Wn.2d 541, 947 P.2d 700 (1997). We, however, review claims of legal error, including whether the instruction amounts to a comment on the evidence, de novo. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). Each instruction is considered in the context of the "instructions as a whole" rather than in isolation. *State v. Benn*, 120 Wn.2d 631, 654-55, 845 P.2d 289 (1993).

Under article IV, section 16 of the Washington Constitution, judges may not comment to the jury on matters of fact. *State v. Dewey*, 93 Wn. App. 50, 58-59, 966 P.2d

414 (1998). "Thus, the judge may not convey to the jury his or her opinion concerning the testimony." *Id.* at 59. If the court expresses its personal feelings on an element of an offense, it is a violation to do so even if the court's feelings are only implied. *State v. Jacobsen*, 78 Wn.2d 491, 495, 477 P.2d 1 (1970). Whether a judge has expressed his or her opinion turns on whether the judge's feeling as to "the truth value of the testimony of a witness has been communicated to the jury." *State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995). "The purpose of prohibiting judicial comments on the evidence is to prevent the jury from being influenced by the trial judge's opinion of the evidence submitted." *State v. Hansen*, 46 Wn. App. 292, 300, 730 P.2d 706, 737 P.2d 670 (1986).

The instruction at issue stated: "It is a crime to possess any amount of controlled substance no matter how small." CP at 56 (instruction 8). The court gave the instruction at the request of the State after defense counsel questioned a forensic witness about the amount of residue in one of the pipes:

> Q [Defense Counsel]: Miss Ricci, going back to Item No. 3, the glass smoking device, you indicated that it had a residue. What does that mean?
> A [Andrea Ricci]: A residue is basically any amount of material that's either too difficult to remove from something or it is something that is not a weighable amount.
> Q [Defense Counsel]: So you're referring to a very small amount of drugs?

RP (June 18 & 19, 2012) at 150.

9

The State objected to the line of questioning, arguing "[c]ounsel is attempting to minimize this, Your Honor. As the Court knows, it doesn't matter how small the amount is." RP (June 18 & 19, 2012) at 150.

The State is correct. "There is no minimum amount of narcotic drug which must be possessed in order to sustain a conviction" for unlawful possession of a controlled substance. *State v. Williams*, 62 Wn. App. 748, 751, 815 P.2d 825 (1991); *see also State v. Larkins*, 79 Wn.2d 392, 394, 486 P.2d 95 (1971) ("Although the legislature had the power to do so, it provided no minimum amount of a narcotic drug, possession of which would sustain a conviction."). Thus, the instruction was an accurate statement of the law.

Moreover, the court did not expressly or impliedly indicate that it assumed Mr. Fenton possessed the methamphetamine. As just noted, it gave the instruction because the defense had raised the issue of the amount of narcotics necessary for possession. This was entirely proper in order to make clear to the jury "the relevant legal standard." *State v. Corn*, 95 Wn. App. 41, 53, 975 P.2d 520 (1999). The instruction did not indicate the judge's opinion on the likelihood of possession. Rather, it explained a potential legal question regarding the amount of drug necessary for conviction, without assuming or implying the defendant's own possession of this drug.

Instruction 8 accurately states the law, is relevant to the issues at trial, and does not suggest the court's opinion on the case. We, therefore, reject the claim that this instruction constituted an unconstitutional comment on the evidence.

*Effective Assistance of Counsel.* Mr. Fenton next argues that we must reverse his conviction for unlawful possession of methamphetamine because his trial counsel rendered ineffective assistance in failing to request an unwitting possession instruction. He argues, "[t]here was no tactical reason why defense counsel did not seek an unwitting possession instruction because the defense theory was primarily that Mr. Fenton was not aware of the drugs." Br. of Appellant at 28.

In reviewing an ineffective assistance of counsel claim, we start with a strong presumption of counsel's effectiveness. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). To establish ineffective assistance of counsel, Mr. Fenton must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *McFarland*, 127 Wn.2d at 334-36. Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *McFarland*, 127 Wn.2d at 334-35. Legitimate trial strategy does not constitute ineffective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009)).

Prejudice occurs when there is a reasonable probability that, but for counsel's deficient performance, the outcome of the case would have differed. *McFarland*, 127 Wn.2d at 335. Failure on either prong defeats a claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 697.

"Failure to request an instruction on a potential defense can constitute ineffective assistance of counsel." *In re Pers. Restraint of Hubert*, 138 Wn. App. 924, 929, 158 P.3d 1282 (2007). To prevail on an ineffective assistance of counsel claim for failure to propose a jury instruction, Mr. Fenton must show that (1) had counsel requested the instruction, the trial court likely would have given it, and (2) defense counsel's failure to request the instruction was not a legitimate tactical decision. *State v. Powell*, 150 Wn. App. 139, 154-55, 206 P.3d 703 (2009).

To convict Mr. Fenton of unlawful possession of a controlled substance, the State had to prove beyond a reasonable doubt that he possessed a controlled substance without a valid prescription or other authorization. RCW 69.50.4013(1). To "ameliorate[] the harshness of [the] strict liability" nature of the crime, a defendant may assert the affirmative defense of unwitting possession. *State v. Bradshaw*, 152 Wn.2d 528, 538, 98 P.3d 1190 (2004). Unwitting possession requires the defendant to prove by a preponderance of the evidence circumstances negating culpability that are "uniquely

12

within his knowledge and ability to establish." *State v. Knapp*, 54 Wn. App. 314, 321, 773 P.2d 134 (1989).

The pattern jury instruction on unwitting possession provides:

> A person is not guilty of possession of a controlled substance if the possession is unwitting. Possession of a controlled substance is unwitting if a person [did not know that the substance was in [his][her] possession] [or][did not know the nature of the substance].
>
> The burden is on the defendant to prove by a preponderance of the evidence that the substance was possessed unwittingly. Preponderance of the evidence means that you must be persuaded, considering all of the evidence in the case, that it is more probably true than not true.

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 52.01, at 1007 (3d ed. 2008).

Contrary to his claim on appeal, Mr. Fenton's defense at trial was general denial, not unwitting possession. During the opening statement, defense counsel pointed out that two women were present during the search of Mr. Fenton's apartment and asserted, "[t]hese drugs did not belong to my client." RP (June 18 & 19, 2012) at 56. During the discussion of jury instructions, defense counsel stated that unwitting possession had "never" been asserted, and asked the State to withdraw its proposed unwitting possession instruction based on Mr. Fenton's general denial defense. The court withdrew the instruction without objection from defense counsel. And during the closing argument, Mr. Fenton again noted the presence of the two women in Mr. Fenton's apartment as well

13

as a pair of woman's jeans found in his living room, arguing "there was ample evidence to show as the defense that there were other people living in that apartment." RP (June 18 & 19, 2012) at 174.

Moreover, defense counsel's decision not to request an unwitting possession instruction can be deemed a legitimate trial tactic. Usually, carrying the burden of proof requires the defendant's testimony that he was not aware of the presence of the controlled substance. Under this justification, only Mr. Fenton could testify to his lack of knowledge of the presence of methamphetamine in his bedroom. Yet, Mr. Fenton's testifying would open him to cross-examination by the prosecution. The right to avoid testifying is an important constitutional right. Counsel may have legitimately weighed the risk of testifying with the need for an unwitting possession instruction. Mr. Fenton fails to establish that defense counsel's performance was deficient. Accordingly, his ineffective assistance claim fails.

*Statement of Additional Grounds for Review.* In his pro se SAG, Mr. Fenton contends that police did not have a search warrant when they searched his apartment and that Ms. Fuentes went to his apartment looking for someone other than him.

These claims involve matters outside the record, *McFarland*, 127 Wn.2d at 335, 338 n.5 (matters outside the record must be raised in a personal restraint petition), and are

No. 31506-1-III
*State v. Fenton*

insufficiently argued. Although RAP 10.10(c) states that reference to the record and citation to authorities are not required in statements of additional grounds for review, the rule also states that the appellate court will not consider the SAG for review if it does not inform the court of the nature and occurrence of the alleged errors. Here, Mr. Fenton fails to cite to the record or adequately describe the nature and occurrence of any alleged errors as required by RAP 10.10(c). Accordingly, we are unable to address his claims.

We affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:


_____          _____
Brown, J.                                Siddoway, C.J.


15