**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 86847-1-I |
| Respondent, | |
| v. | DIVISION ONE |
| YOON MYONG BANG, | UNPUBLISHED OPINION |
| Appellant. | |

MANN, J. — Yoon Myong Bang appeals his conviction for murder in the second degree. Bang argues the trial court (1) violated his constitutional right to a unanimous verdict, (2) erred by failing to instruct the jury on the defense theory of self-defense, (3) unconstitutionally made improper comments throughout the proceeding, and (4) abused its discretion by excluding evidence of the victim's prior misconduct and use of illegal substances. We affirm.

I

Bang met Scott Howard at a Home Depot. Howard told Bang he was a general contractor and gave Bang his contact information. Bang later called Howard and asked if he was interested in remodeling a bathroom at the Bang residence in Spanaway.

Howard agreed to do the project and Bang agreed to pay Howard about $2,500 for his labor.

Howard asked a colleague, Joseph Criss, to assist on the project to set the tile. Howard struggled to complete the plumbing necessary to finish the project and so Criss ended up doing more of the work. Bang expressed concern about the plumbing and the quality of Howard's work to both Criss and Howard. As the project continued, Bang became increasingly frustrated with Howard.

On August 28, 2021, the project was nearing completion and Howard was eager to get paid. Howard and Criss reinstalled the bathroom toilet and it began leaking. This upset Bang who then told Howard to leave and that he was not going to pay him. Bang and Howard argued, both growing angrier. Howard threatened to break the tile with a hammer if Bang did not pay him. Howard hit the bathroom counter with the hammer to make some noise and said "what are you going to do about it." Howard exited the bathroom, going past Bang into the bedroom.

Criss, hearing a gunshot, came out of the bathroom and into the bedroom where Bang told him he shot Howard and to call 911. Criss went outside to call 911, leaving Bang inside. Bang was looking for his phone and stepping over Howard when he felt Howard grab his ankle, nearly causing him to fall. Bang, seeing Howard still holding the hammer, shot Howard in the head again, killing him. While outside on the phone with 911, Criss heard the second shot. When police officers arrived, Bang stated to an officer, "I shot him."

Bang was initially charged with murder in the first degree while armed with a firearm (count 1) and murder in the second degree while armed with a firearm (count 2).

The information was later amended to include a third count of assault in the first degree while armed with a firearm (count 3). Bang asserted a defense of justifiable or excusable homicide.

The State moved to exclude evidence of Howard's character or reputation for violence and any specific instances of violent conduct by Howard. The trial court granted the motion, subject to reconsideration outside the jury's presence. The State also moved to exclude evidence of Howard's history of drug use and the positive toxicology results for methamphetamine. Bang objected to the exclusion of the toxicology report because it would substantiate his observations of Howard's behavior at the time of the shooting. The trial court granted the State's motion, subject to additional information from a witness that methamphetamine contributed to Howard's behavior.

At trial, Criss testified about the argument leading up to the shooting and described Bang and Howard as arguing in the bathroom with Bang telling Howard to leave and Howard refusing. Criss testified that Bang raised a gun, told Criss to get out of the way, then Howard bolted out of the bathroom and Bang followed. Bang testified that Howard did not know of the gun when Howard pushed past him out of the bathroom with the hammer in his hand. Bang said he followed Howard because he was concerned of what Howard would do and where he was going. Bang testified that as Howard went to leave the bedroom, he turned toward Bang and raised the hammer leading Bang to shoot Howard. Bang testified that right before he shot his gun, Howard saw the gun and was surprised.

-3-

The jury found Bang not guilty of counts 2 (murder in the second degree) and 3 (assault in the first degree). The jury convicted Bang of murder in the second degree as a lesser included crime of count 1 (murder in the first degree).

II

Bang argues the trial court violated his constitutional right to a unanimous verdict because it failed to give a unanimity instruction to the jury on counts 1 (murder in the first degree) and 2 (murder in the second degree). Bang asserts the jury was not clearly informed that the State made an election as to which act to rely on for the murder charges. We disagree.

A

Criminal defendants have a right to a unanimous jury verdict. WASH. CONST. art. 1, § 21; State v. Ortega-Martinez, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). When the State presents evidence of multiple acts that could constitute the crime charged, it generally must either (1) tell the jury which act to rely on in its deliberations, or (2) the court must instruct the jury that it must unanimously agree on which specific act supports the conviction. State v. Kitchen, 110 Wn.2d 403, 409-11, 756 P.2d 105 (1988). The former is known as an "election" and the latter is known as a "Petrich instruction" after State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), abrogated on other grounds by Kitchen, 110 Wn.2d at 403. Failure by the State to elect and by the trial court to give a Petrich instruction can be a constitutional error because of "the possibility that some jurors may have relied on one act or incident and some another, resulting in a lack of unanimity on all of the elements necessary for a valid conviction." Kitchen, 110 Wn.2d at 411. "Whether or not a unanimity instruction was required in a

-4-

particular case is a question of law reviewed de novo." State v. Lee, 12 Wn. App. 2d 378, 460 P.3d 701 (2020).

An election by the State need not be incorporated in the information or ratified by the court. State v. Carson, 184 Wn.2d 207, 227, 357 P.3d 1064 (2015). The State may elect by clearly identifying and telling the jury the particular act on which particular charges is based. Carson, 184 Wn.2d at 227. For example, in State v. Thompson, 169 Wn. App. 436, 290 P.3d 996 (2012), the State properly elected when it clearly identified the act on which the charge was based and did not mention the other act. In that case, the defendant argued the sexual motivation allegations related to three charges required a unanimity instruction because there was evidence of two acts: touching of a victim's arm and instructing a victim to disrobe. This court disagreed because the State specifically elected the act of instructing the victim to disrobe by telling the jury "[b]ut if you find after your good deliberations that one of the purposes for what he did towards [disrobing victim] was for his sexual gratification, [he] is guilty." Thompson, 169 Wn. App. at 475.

In contrast, in State v. Aguilar, 27 Wn. App. 2d 905, 924-25, 534 P.3d 360 (2023), the State did not make a clear election for acts underlying one count of rape because throughout trial the State repeatedly opined that more than one rape occurred. Similarly, in State v. Williams, 136 Wn. App. 486, 497, 150 P.3d 111 (2007), there was no election where the State emphasized one act over another, but did not expressly elect to rely only on one of the acts.

B

During closing argument, the State associated the first shot with count 3 (assault in the first degree) and the second shot with count 1 (murder in the first degree):

I'm going to go through these counts in chronological order, so I'm going to start with Count 3. Then I'm going to address Counts 1 and 2.
. . . .
[Bang] pointed that gun at [Howard], at his face, and he shot him in the eye. And that destroyed Scott Howard's eye. And Dr. Williams testified that the destruction of his eye rendered him blind in that eye; [i]n other words, a permanent loss of a function of a body part. So the State has proved each element of the crime of assault in the first degree.

So moving on to the second shot, the shot that killed Scott Howard. Instruction No. 10 addresses murder in the first degree. . . . Dr. Williams testified that second shot, the shot that lacerated his spinal cord that entered through his left cheek, Scott Howard's left cheek, was rapidly fatal. He died because of that bullet. The defendant admitted firing that shot. So the State has proved beyond a reasonable doubt that Scott Howard died as a result of the defendant's acts.

Did he act with intent to cause the death of Scott Howard? Again, this is the second shot.

The State went on to discuss count 2 (murder in the second degree), an element of which includes first or second degree assault and again referred to the second shot:

Count 2 is Instruction No. 22 . . . So the defendant committed—did the State prove that the defendant committed either assault in the first degree or assault in the second degree? We've already talked about assault in the first degree.
. . . .
Finally, did the defendant cause the death of Scott Howard in the course of and in furtherance of the crime of assault in the first degree or assault in the second degree? Absolutely. The State has proved that beyond a reasonable doubt. He died as a result of the gunshot wound to the cheek that lacerated his tongue, lacerated his larynx, lacerated his spinal cord.

The State has proved beyond all reasonable doubt all four elements of murder in the second degree.

As in Thompson, the State made a clear election. In closing argument, the State clearly elected the second shot as the act supporting count 1 by expressly, and more than once, referring to the second fatal shot (also known as the shot to the cheek) and by never mentioning the first shot. The State also elected the second shot as the act supporting count 2 when it expressly referred to the shot to the cheek. And, in addition to its closing remarks, the State made express elections in its opening statement when it associated counts 1 and 2 with the second shot and count 3 with the first shot. Making a clear election satisfies the unanimity concern.

C

Bang also points to the trial court's mention of Petrich, while discussing jury questions during deliberations, and the court's response to the jury to consider the evidence "as a whole as to all counts" as supporting his unanimity claim.

During deliberations, the jury asked the trial court to "clarify if count 1 is specific to a specific shot or the incident in its totality. Please do the same for count 2." The trial court answered that the jury should "consider the evidence as a whole as to all counts." The jury also asked for "clarification if each count is associated with a specific shot." In discussion with counsel, the trial court noted that the question raised an issue like a "Petrich thing, jury unanimity" and continued:

> [T]he State elected that the shot involving the cheek was the homicide shot. And Counts 1 and 2 are essentially three different ways because we have a lesser—three different ways of contemplating—complete a murder of some sort, premeditated murder, intentional murder without premeditation, and felony murder. And that's all associated with the shot to the cheek. None of that is associated with the shot above the forehead. And—and if—if he's not acting with self-defense, then he's either committing an assault, which is the felony murder, or he's committing intentional murder. He's not committing an assault in and of itself.

-7-

Because if he committed an assault that resulted in the death, which is there's no doubt that that's what happened, then he's guilty of felony murder and he can't be guilty of the assault one.

. . . .

I'm clarifying what the charges are. Now, if the defense really doesn't want me to do that, I won't. But I think there's a danger here to the defense.

Defense counsel agreed. Accordingly, the trial court told the jury that the "State's charge in count 3 is associated with the gunshot to Scott Howard's eyebrow."

The trial court's response to the jury repeated the election of the first shot for the charge in count 3. The trial court did not err by clarifying charges or instructing the jury to consider all the evidence for counts 1 and 2.

Because the State clearly elected which act supported each count, Bang's argument fails. A unanimity instruction was not required and there was no violation of Bang's constitutional right to a unanimous verdict.

III

Bang argues the trial court violated his right to present a complete defense when it refused to instruct the jury on justifiable homicide in resistance of a felony under RCW 9A.16.050(2) and WPIC 16.03. We disagree.

A

A trial court's refusal to give a self-defense instruction based on a factual dispute is reviewed for an abuse of discretion. State v. Brightman, 155 Wn.2d 506, 519, 122 P.3d 150 (2005). A refusal to give the instruction based on a ruling of law is reviewed de novo. Brightman, 155 Wn.2d at 519. "Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a

whole properly inform the trier of fact of the applicable law." State v. Killingsworth, 166 Wn. App. 283, 288, 269 P.3d 1064 (2012) (internal quotation marks omitted).

"A defendant is entitled to an instruction on justifiable homicide when he or she has raised some credible evidence, from whatever source, to establish that the killing occurred in circumstances that meet the requirements of RCW 9A.16.050." Brightman, 155 Wn.2d at 520. But "a defendant is not entitled to repetitious instructions." State v. Bogdanov, 27 Wn. App. 2d 603, 618, 532 P.3d 1035, review denied, 2 Wn.3d 1008 (2023).

RCW 9A.16.050 provides homicide is justifiable when committed either:

(1) In the lawful defense of the slayer, or his or her husband, wife, parent, child, brother, or sister, or of any other person in his or her presence or company, when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer or to any such person, and there is imminent danger of such design being accomplished; or

(2) In the actual resistance of an attempt to commit a felony upon the slayer, in his or her presence, or upon or in a dwelling, or other place of abode, in which he or she is.

Under both subsections of RCW 9A.16.050, the use of deadly force must be reasonably necessary under the circumstances. Brightman, 155 Wn.2d at 523. RCW 9A.16.050(2) specifically "addresses situations in which a felony or attempted felony is already in progress." Brightman, 155 Wn.2d at 521. As this court explained in State v. Ackerman, 11 Wn. App. 2d, 304, 314, 453 P.3d 749 (2019):

While subsection (1) concerns justifiable homicide in the defense of self and others, subsection (2) regards justifiable homicide in resistance to a felony. Although subsection (1) requires, in part, "some great personal injury to the slayer or to any such person" and "imminent danger of such design being accomplished," subsection (2) does not contain such language. Given the disjunctive structure of the statute, the requirements

of great personal injury and imminent danger in subsection (1) do not relate to subsection (2).

B

The trial court instructed the jury on justifiable homicide using WPIC 16.02,[1] which is based on RCW 9A.16.050(1):

It is a defense to the crimes in Counts I, II, and III that the homicide or assault was justifiable as defined in this instruction.

Homicide is justifiable when committed in the lawful defense of the slayer or the slayer's wife or any person in the slayer's presence or company when:

(1) The slayer reasonably believed that the person slain intended to commit a felony or inflict death or great personal injury;

(2) The slayer reasonably believed that there was an imminent danger of such harm being accomplished; and

(3) The slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him, at the time of the incident.

The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable. If you find that the State has not proved the absence beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

Bang proposed instructing the jury on both RCW 9A.16.050(1) and .050(2) using both WPIC 16.02 and WPIC 16.03. Bang's proposed WPIC 16.03 instruction provided:

It is a defense to a charge of murder that the homicide or assault was justifiable as defined in this instruction.

Homicide is justifiable when committed in the actual resistance of an attempt to commit a felony upon the slayer or in the presence of the slayer

---

[1] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 16.02, at 183 (5th ed. 2024) (WPIC).

or upon or in a dwelling or other place of abode in which the slayer is present.

The slayer may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him at the time of the incident.

During argument, defense counsel asserted that the instruction was necessary:

It does not include the language in 16.02 that it must be imminent. It's a lesser offense meaning my client doesn't have to believe it's imminent. But if it's happening in his home and it's reasonably prudent based on what he's seeing, that's a defense. 16.02 . . . doesn't include the dwelling component or, and also adds that we believe it's imminent.

The trial court declined to include WPIC 16.03 based on the facts of the case:

[THE COURT]: [H]ere we have a situation where the decedent was invited into the place, was working there regularly, had been there for a couple of weeks, had been in and out of the house regularly, that the argument began in the home, if you will, and that of itself does create some special difference in terms of imminence. . . .

MR. AUSSERER: My response to that, Judge, would be that he was already asked to leave. He was not.

THE COURT: There was evidence that he was, in fact, leaving.

MR. AUSSERER: And then turned around.

THE COURT: Right. So at that point, he's not committing a burglary or a malicious mischief in there. He's potentially committing an assault.

The trial court noted that it was up to the jury to figure out the disputed facts of whether

Howard was in fact leaving when he turned toward Bang and was shot:

His intent is to commit an assault right there, presumably. It's not that he intended to remain in order to commit the assault. I mean, if he wanted to commit the assault, he could have struck Mr. Bang in the bathroom.
            . . . .
Now, there's a dispute here as to whether or not Mr. Howard knew that Mr. Bang had a handgun at that point in time. According to Mr. Criss's testimony, Mr. Howard knew he had the gun. That's why he was leaving

-11-

so suddenly. Under Mr. Bang's theory of events, he didn't realize that he had the gun until he turned and saw it. . . .

So that's up to the jury to sort all that out what happened there, but I don't think, under the circumstances in this case, it would be appropriate. And I think it would be confusing to sort of create a different standard because it happened in the house of itself. This is not about a residential burglary. This is about potentially an assault to Mr. Bang that he defended himself from.

C

Bang first argues that because there was evidence Howard committed burglary close in time to the shooting, the court should have given an instruction under RCW 9A.16.050(2). Bang relies on Ackerman. Conversely, the State argues that the jury was properly instructed with WPIC 16.02 and that giving WPIC 16.03 would have been unnecessarily duplicative. The State relies on State v. Brenner, 53 Wn. App. 367, 376, 768 P.2d 509 (1989), overruled on other grounds by State v. Wentz, 149 Wn.2d 342, 68 P.3d 282 (2003). We agree with the State.

In Ackerman, the court modified WPIC 16.03 so that it said "violent felony," and included language similar to that found in WPIC 16.02: "slayer reasonably believed that the violent felony threatens imminent danger of death or great personal injury." 11 Wn. App. 2d at 312. This court determined that "the requirements of great personal injury and imminent danger in subsection (1) do not relate to subsection (2)." Ackerman, 11 Wn. App. 2d at 314. Citing Brightman, the court added that the use of deadly force must be reasonable and that requirement is encompassed in WPIC 16.03 by its use of the following language: "slayer may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer." Ackerman, 11 Wn. App. 2d at 314. The court held that the trial

-12-

court erred because it misstated the requirements of RCW 9A.16.050(2) when it instructed the jury to consider reasonable belief of imminent danger. Ackerman, 11 Wn. App. 2d at 314-15.

In Brightman, the defendant argued that fear of death or great bodily injury was not required to justify deadly force when the defendant acted in self-defense to an attempted robbery of $20. 155 Wn.2d at 510, 521. Brightman's theory was that the killing was not justified under RCW 9A.16.050(1) because he did not fear the victim, but the killing was justified under subsection (2). The court cited Brenner and agreed with its conclusion that each act of deadly force must be reasonably necessary under the circumstances. Brightman, 155 Wn.2d at 522-23. The court held that the trial court did not err by refusing to give a justifiable homicide instruction "because Brightman freely admitted that he did not fear [the victim]." Brightman, 155 Wn.2d at 523-24.

In Brenner, the trial court gave an instruction that homicide is justifiable "when the defendant reasonably believes that the person slain intends to inflict death or great personal injury and there is imminent danger of such harm being accomplished," and did not give an instruction on justifiable homicide in resistance of a felony. 53 Wn. App. at 375. This court determined the instruction was proper because it allowed the defendant to argue his "more narrow actual resistance of a felony within the broader language of reasonable belief of intent," and the defendant's proposed instruction "simply repeats the substance" of the instruction given. Brenner, 53 Wn. App. at 377. Similarly, in State v. Boisselle, 3 Wn. App. 2d 266, 291, 415 P.3d 621 (2018), rev'd on other grounds, 194 Wn.2d 1, 448 P.3d 19 (2019), this court held that because the defendant "was already arguing that he was resisting death or great bodily harm,"

consistent with WPIC 16.02, the proposed instruction, WPIC 16.03, would have been repetitious.

Here, unlike in Ackerman, the trial court did not modify the jury instructions to misstate the law. Moreover, Bang was able to argue his theory of defense under WPIC 16.02. At trial, Bang's theory of self-defense was that he was afraid of Howard and that Howard would use the hammer against him or his wife. During his testimony, Bang stated that he shot Howard the first time because he feared that Howard was about to hit him with a hammer. Bang also stated that he shot Howard a second time because he was again afraid that Howard was going to hit him with a hammer.

The trial court decided that under the facts of the case, which were disputed as to whether Howard was in fact leaving when he was shot, an instruction based on WPIC 16.03 and burglary would unnecessarily confuse the jury when the underlying felony was the assault with the hammer and Bang's theory of defense was fear of and resistance to the assault. Like the defense theory in Boisselle, there is no substantive difference between Bang using deadly force because he feared Howard intended to strike him with the hammer, and using deadly force in active resistance of Bang's attempted burglary. The given instruction did not misstate the law and it allowed Bang to argue his theory of the case. And Bang does not persuade that the given instruction misled the jury. Thus, the trial court did not abuse its discretion by refusing to instruct the jury under WPIC 16.03.

D

Bang also contends that under either justifiable homicide instruction, WPIC 16.02 or 16.03, the trial court should have also issued an instruction based on WPIC 2.09.

-14-

WPIC 2.09 instructs the jury that a particular crime as a felony, "[blank] is a felony." Here, the jury was instructed that homicide is justified if Bang reasonably believed Howard intended to commit a felony or inflict death or great personal injury. The jury was also instructed that "a person commits the <u>felony crime of assault</u> in the second degree when he or she assaults another with a deadly weapon." (Emphasis added.) Bang's theory of defense was that he was afraid of death or great bodily injury from Howard using the hammer against him. Bang fails to explain how the lack of an instruction based on WPIC 2.09 renders the justifiable homicide instruction deficient or resulted in prejudice. And this court presumes the jury followed the trial court's instructions. <u>State v. Emery</u>, 174 Wn.2d 741, 754, 278 P.3d 653 (2012).

E

Finally, Bang asserts the jury was not properly instructed that self-defense could apply to the lesser included offense of count 1 and points to the trial court's failure to include self-defense in the "to convict" instruction for the lesser included offense. We disagree.

The jury was given "to convict" instructions for each count. The fact the trial court did not include justifiable homicide in the instruction on the lesser included offense of count 1 is inconsequential. None of the "to convict" instructions included a reference to justifiable homicide. Related to count 1, the jury was instructed that "a person commits the crime of murder in the second degree as a lesser crime to count 1," when the person has intent to cause death but without premeditation. And the trial court gave "to convict" instructions for the "lesser crime of murder in the second degree in count 1." And the jury was instructed that justifiable homicide was a defense to count 1. The trial

court did not misstate the law or mislead the jury on the theory of self-defense and "jurors are presumed to follow their instructions." Emery, 174 Wn.2d at 754.

The jury was properly instructed on justifiable homicide and the trial court did not violate Bang's constitutional right to present a complete defense.

IV

Bang argues the trial court made improper comments in violation of article IV, section 16 of the Washington Constitution. We disagree.

A

Under article IV, section 16 of the Washington Constitution, a judge is prohibited from conveying to the jury his or her personal opinion about the merits of the case or from instructing the jury that a fact at issue has been established. State v. Hartzell, 156 Wn. App. 918, 938, 237 P.3d 928 (2010). The purpose of prohibiting judges from commenting on the evidence is to "prevent the jury from being influenced by the trial judge's opinion of the evidence submitted." State v. Hansen, 46 Wn. App. 292, 300, 730 P.2d 706 (1986). "The determination of whether a comment on the evidence is improper depends on the facts and circumstances in each case." State v. Eaker, 113 Wn. App. 111, 117-18, 53 P.3d 37 (2002), review denied, 149 Wn.2d 1003 (2003).

A comment on the evidence occurs "only if the court's attitude toward the merits of the case or the court's evaluation relative to a disputed issue is inferable from the statement." Hansen, 46 Wn. App. at 300. "A judge need not expressly convey his or her personal feelings on an element of the offense; it is sufficient if they are merely implied." State v. Jackman, 156 Wn.2d 736, 744, 132 P.3d 136 (2006). Generally, "the touchstone of error in a trial court's comment on the evidence is whether the feeling of

the trial court as to the truth value of the testimony of a witness has been communicated to the jury." State v. Brush, 183 Wn.2d 550, 565-66, 353 P.3d 213 (2015) (Wiggins, J., concurring in part and concurring in result). Because the constitution prohibits judicial comments on the evidence, a claimed error based on such a comment involves a manifest constitutional error that Bang may raise for the first time on appeal. State v. Levy, 156 Wn.2d 709, 719-20, 132 P.3d 1076 (2006).

B

Bang points to two comments by the trial court during examination of the pathologist but fails to provide supporting argument or authority to persuade us that the comments were improper and simply concludes the comments were highly prejudicial. The trial court's comments were in response to an objection and a cross-examination question on expertise related to travel of the bullet through space:

> THE COURT: I don't know that that's what this is really getting at, to be honest with you, but it's not the traveling through the space that's the problem because if it's through space, there's nothing but gravity and the air in the room that's affecting it.
>
> But the bigger issue for all of you is, did it continue to travel in any particular path, and is that path a true path based upon what we see from the trajectory rods for that particular wound? That's really what you're getting at, I think if anybody understands what any of us is talking about by now. I'll let the doctor answer, if he can.
>     . . . .
> Q: . . . the bullet would have been coming from above his head through his cheek and then out through the back from right to left?
> A: It was a downward trajectory.
>     . . . .
> A: Again, downward trajectory through the body.
> Q: Because you're only talking about through body, not space?
> A: Exactly.
> Q: All right.
> THE COURT: But above has a couple of connotations here, so I just want to make sure we're clear. Because if this is the head, above could be this

-17-

way in general, or if the face is like this, above could be that way, too. So when you are asking if the shot is from above, see what I'm saying? It's ambiguous.

Bang also points to the trial court's comments during his testimony but again fails to provide supporting argument or authority. The trial court's comment was in response to defense counsel's objection to the State's questions about gun safety:

> THE COURT: Well, we have some testimony from Mr. Bang that he had been in the Army, that he had been in combat. I take it from that it's a reasonable inference that he has some familiarity with firearms. He has also indicated he has owned a weapon for many years and that he previously owned a revolver among—in addition to the weapon we have here. So he has some familiarity with firearms, it's not unreasonable for counsel to explore what that understanding might be. I don't know about the specifics of these so-called four rules of gun safety, but certainly
>
> MR. AUSSERER: He testified that he's not aware of those four specifics.
>
> THE COURT: She can ask him about them, and maybe he knows about them sort of independently without them being known as the four rules of gun safety. I mean, I don't know. But in general, I'm going to allow her to inquire about his—
>
> MR. AUSSERER: Understood, thank you.
>
> THE COURT: —experiences and knowledge about this.

Assuming, without deciding, that the trial court's comment was improper, any such error was harmless. "A judicial comment is presumed prejudicial and is only not prejudicial if the record affirmatively shows no prejudice could have resulted." Levy, 156 Wn.2d at 725. There is also a presumption that the jury follows the trial court's instructions. Emery, 174 Wn.2d at 754. Accordingly, even when a trial court makes an improper comment, the error may be cured by a jury instruction to disregard any comments on the evidence. Hizey v. Carpenter, 119 Wn.2d 251, 271 830 P.2d 646 (1992).

Here, jury instruction 1 told the jury to disregard such comments:

Our state constitution prohibits a trial judge from making a comment on the evidence. It would be improper for me to express, by words or conduct, my personal opinion about the value of testimony or other evidence. I have not intentionally done this. If it appeared to you that I have indicated my personal opinion in any way, either during trial or in giving these instructions, you must disregard this entirely.

Because this court presumes the jury follows the instructions of the trial court, any alleged error here would have been cured by the instruction.

V

Bang argues the trial court violated his constitutional right to present a defense and abused its discretion by excluding all evidence of Howard's character and drug use.

At trial, Bang objected to the State's motion in limine to exclude reputation evidence that supports Bang's assertion that Howard was the aggressor. It was undisputed that Bang did not know of Howard's reputation. And the trial court decided that Howard's reputation for making verbal threats of physical violence was irrelevant absent testimony that Howard made such threats in this case. The court added that if, for example, there was such testimony by Bang, and the character evidence became relevant, the court would consider admissibility of the character testimony outside the jury's presence. But Bang never sought a final decision on the evidence and thus waived any error in excluding it. State v. Carlson, 61 Wn. App. 865, 875, 812 P.2d 536 (1991) ("when a ruling on a motion in limine is tentative, any error in admitting or excluding evidence is waived unless the trial court is given an opportunity to reconsider its ruling").

Second, Bang argues the trial court abused its discretion by excluding the toxicology report. But the trial court did not exclude the toxicology report and instead, in response to a request by defense counsel, reserved its ruling pending further development:

> MR. AUSSERER: What I will do is ask to have a . . . supplemental interview, I guess, with the medical examiner and be more specific. Because our conversation was very surface level and so what I would ask the Court to do is reserve until I have that conversation.
>
> THE COURT: All right. . . . with respect to the toxicology results, I guess I'll reserve that for the moment.

Bang did not to pursue this inquiry further or seek to introduce the toxicology report as trial progressed and so the trial court was not given an opportunity to reconsider admissibility. Accordingly, Bang waived any error related to excluding the toxicology report. Carlson, 61 Wn. App. at 875. Bang fails to establish the trial court abused its discretion or that his constitutional rights were violated.

We affirm.

_____
Mann, J.

WE CONCUR:

_____          _____